Ninth Monitor's Tool

Review Period:
8/25/25 – 2/24/26

THE UNITED STATES OF AMERICA

v.

THE STATE OF NEW JERSEY AND
THE NEW JERSEY DEPARTMENT
OF CORRECTIONS

Prepared by Jane Parnell

## INTRODUCTION

**¶ 125  Monitoring Reports:**

The Monitor will conduct an on-site inspection and issue a Monitoring Report for Edna Mahan six months after the baseline site visit, and then every six months thereafter. A draft Monitoring Report will be provided to NJDOC and DOJ in draft form for comment at least 30 days prior to its issuance. NJDOC and DOJ will provide comments, if any, to the Monitor within 15 days of receipt of the draft Report. The Monitor will consider the responses of NJDOC and DOJ and make appropriate changes, if any, before issuing the final Monitoring Report.

Requirements:

¶ 125 a. Within two months of the Effective Date, the Monitor will conduct a baseline site visit of Edna Mahan to become familiar with Edna Mahan and this Agreement.

¶ 125 b. The Monitor will conduct an on-site inspection and issue a Monitoring Report for Edna Mahan six months after the baseline site visit, and then every six months thereafter. A draft Monitoring Report will be provided to NJDOC and DOJ in draft form for comment at least 30 days prior to its issuance. NJDOC and DOJ will provide comments, if any, to the Monitor within 15 days of receipt of the draft Report. The Monitor will consider the responses of NJDOC and DOJ and make appropriate changes, if any, before issuing the final Monitoring Report.

¶ 125 c. The Monitoring Reports will describe the steps taken by Edna Mahan to implement this Agreement and evaluate the extent to which Edna Mahan has complied with each substantive provision of the Agreement, as set forth in the numbered Paragraphs herein, beginning with Paragraph 10 and ending at Paragraph 111.

¶ 125 d. Each Monitoring Report will evaluate the status of compliance for each relevant provision of the Agreement using the following standards: (1) Substantial Compliance; (2) Partial Compliance; and (3) Non-compliance.

¶ 125 e. The Monitor will review a sufficient number of pertinent documents and interview a sufficient number of staff and prisoners to accurately assess current conditions. The provision of documents and scheduling of interviews shall be set up through the Agreement Coordinator.

¶ 125 f. Each Monitoring Report will describe the steps taken by each member of the monitoring team to analyze conditions and assess compliance, including documents reviewed and individuals interviewed, and the factual basis for each of the Monitor's findings.

¶ 125 g. Each Monitoring Report will contain the Monitor's independent verification of representations from Edna Mahan regarding progress toward compliance, and examination of supporting documentation.

¶ 125 h. Each Monitoring Report will provide specific, non-binding recommendations, if applicable, for each of the provisions in the Agreement outlining proposed actions for at least the next six months for Edna Mahan to complete toward achieving compliance with the particular provision..

## A. GENERAL POLICIES AND PROCEDURES

*¶10: During the first nine (9) months following the Effective Date, NJDOC and Edna Mahan will ensure the policies and procedures related to the topics specified below are drafted and/or revised in accordance with this Agreement and to incorporate gender-responsive strategies, as applicable.*

*¶ 10 a.    Sexual Assault, Sexual Abuse, and Sexual Harassment;*
*¶ 10 b.    Prisoner Supervision;*
*¶ 10 c.    Camera Management;*
*¶ 10 d.    Staff/Prisoner Over-Familiarity;*
*¶ 10 e.    Reporting Incidents or Allegations of Sexual Abuse or Sexual Harassment;*
*¶ 10 f.    Prisoner Education;*
*¶ 10 g.    Cross-gender searches and viewing;*
*¶ 10 h.    Protective Custody;*
*¶ 10 i.    Prevention of Retaliation;*
*¶ 10 j.    Response to Allegations of Sexual Abuse or Sexual Harassment;*
*¶ 10 k.    Referrals and Investigations of Allegations of Sexual Abuse or Sexual Harassment;*
*¶ 10 l.    Staff Reporting of Personal Relationships.*

### NJDOC — 2/24/26 Status Report

NJDOC reviews all policies applicable to Paragraph 10 annually. Pursuant to counsel's discussion and agreement, minor revisions to adopted policies that do not substantively alter the policy's meaning, scope, purpose, etc., are not required to be submitted for review or approval.

### Monitor's Finding of Compliance re A. General Policies and Procedures ¶ 10

[X]  Substantial Compliance
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion re A. General Policies and Procedures ¶ 10

As of February 24, 2024, New Jersey Department of Corrections (NJDOC) had revised, finalized and adopted the following Level 1 policies:

- ADM.010.004 - Staff/Incarcerated Person Over Familiarity
- CUS.001.CRP.01 - Camera Review Procedures
- CUS.001.SEA.001 - Searches of Incarcerated Persons and Correctional Facilities
- PCS.001.008 - Prevention, Detection and Response of Sexual Abuse and Harassment
- SID IMP #14
- SID IMP #35
- SID IMP #48

- ADM.019.003 - Close Custody Units
- CUS.001.011 – Policy Statement - Searches of Incarcerated Persons and Correctional Facilities
- IMM.001.004 - Zero Tolerance Policy: Prison Sexual Abuse and Sexual Harassment
- IMM.004.RHU.03 - Amenities and Privileges Two-Level Program
- ADM.019.003.ADJU - Adjustment Unit
- ADM.019.003.EMCT - Emergency Confinement
- CUS.001.BWC.011 – Body Worn Cameras

Additionally, as of August 23, 2024, the following Level 3 policies (those specific to Edna Mahan) were revised and updated
- IMP #2 South, North, and Dormitory Officers (replaced the Max Housing Unit Officer)
- IMP # 2A South North Hall Control Officers (replaced the Limited Privileges Unit)
- IMP # 3 EMCF Satellite Entrance Control Officer
- IMP # 3A EMCF Satellite General Assignment Officer
- IMP #3B EMCF Satellite Unit Housing Officer
- IMP #15 C-Cottage Unit Officers (replaced Residential Treatment Unit)

Additionally, on November 23, 2025, NJDOC updated the following policies that refer to or relate to cross-gender strip searches to specify that such searches may take place only in emergent rather than exigent circumstances.  The definition of "exigent circumstance" –  "any set of temporary and unforeseen circumstances that require immediate action to combat a threat to the security or institutional order of a facility" – was determined to be too broad to describe the limited situations in which a cross-gender strip search may occur.  Accordingly, policies were updated to reflect that cross-gender strip searches may only occur in an "emergent circumstance," defined as "a serious, unexpected, and dangerous situation requiring immediate action."
- CUS.001.SEA.001 - Searches of Incarcerated Persons and Correctional Facilities
- PCS.001.008 - Prevention, Detection and Response of Sexual Abuse and Harassment
- CUS.001.SEA.001 - Searches of Incarcerated Persons and Correctional Facilities
- IMP # 3 EMCF Satellite Entrance Control Officer
- IMP # 3A EMCF Satellite General Assignment Officer
- IMP #3B EMCF Satellite Unit Housing Officer
- IMP #15 C-Cottage Unit Officers

**Recommendation:**  No recommendation

*¶11: Within one year of the Effective Date, all policies and procedures specified to be drafted and/or revised to incorporate and align them with the provisions in this Agreement will be adopted by Edna Mahan.*

### NJDOC — 2/24/26 Status Report

NJDOC reviews policies applicable to Paragraph 10 annually. Pursuant to counsel's discussion and agreement, minor revisions to adopted policies that do not substantively alter the policy's meaning, scope, purpose, etc., are not required to be submitted for review or approval.

### Monitor's Finding of Compliance re A. General Policies and Procedures ¶ 11

[X]  **Substantial Compliance**
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion re A. General Policies and Procedures ¶ 11

Effective February 24, 2024, Edna Mahan adopted the 14 Level 1 policies listed in the above paragraph. Additionally, as of August 23, 2024, Edna Mahan finalized and adopted six (6) Level 3 policies (those specific to Edna Mahan and listed in the above section).

**Recommendation:**  No recommendation

*¶13:  No later than ninety (90) days after DOJ's approval of each policy and procedure (except as otherwise stated in the Agreement), Edna Mahan will create a staff training plan that addresses the training requirements of each policy or procedure revised.*

### NJDOC — 2/24/26 Status Report

NJDOC remains prepared to provide updated training plans to the Monitor and DOJ according to the timeline indicated in this Agreement, that is, within 90 days of DOJ's approval of each relevant policy. There were no newly drafted policies during this reporting period.

### Monitor's Finding of Compliance re A. General Policies and Procedures ¶ 13

[X]  **Substantial Compliance**
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

**Monitor's Discussion re A. General Policies and Procedures ¶ 13**
NJDOC developed and delivered training for all EMCF staff, contract staff, and volunteers specific to the revised Level 1 and Level 3 policies listed above.

**Recommendation:**  No recommendation

---

*¶14: Unless otherwise agreed to by the Parties, all policies and procedures specified in Paragraph 10 will be fully implemented upon completion of the staff training plan, with a goal of all training being completed within eighteen (18) months or sooner of DOJ's approval of the policy or procedure (except as otherwise stated in the Agreement).*

**NJDOC — 2/24/26 Status Report**
NJDOC continues to be prepared to comply with Paragraph 14 by ensuring all applicable staff receive approved policies and are fully trained on compliance with those within the timeline indicated in this Agreement, that is, within 18 months of DOJ's approval of each relevant policy. There were no newly drafted policies during the reporting period.

**Monitor's Finding of Compliance re A. General Policies and Procedures ¶ 14**
[X]  **Substantial Compliance**
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

**Monitor's Discussion re A. General Policies and Procedures ¶ 14**
NJDOC developed and delivered training for all EMCF staff, contract staff, and volunteers specific to the revised Level 1 and Level 3 policies listed above.

**Recommendation:**  No recommendation

---

*¶15: Edna Mahan will annually review its policies and procedures, revising them as it deems necessary. Any revisions to the policies and procedures will be submitted to DOJ for approval in accordance with Paragraph 12.*

**NJDOC — 2/24/26 Status Report**
NJDOC complies with Paragraph 15 and has reviewed all policies applicable to Paragraph 10 annually. Pursuant to counsel's discussion and agreement, minor revisions to adopted policies that do not substantively alter the policy's meaning, scope, purpose, etc., are not required to be submitted for review or approval.

**Monitor's Finding of Compliance re A. General Policies and Procedures ¶ 15**

[X]  **Substantial Compliance**

[  ] Partial Compliance

[  ] Non-compliance

[  ] N/A not required until [ date ]

[  ] N/A monitor granted an extension until [ date ]

**Monitor's Discussion re A. General Policies and Procedures ¶ 15**

On November 23, 2025, NJDOC updated the following policies that refer to or relate to cross-gender strip searches to specify that such searches may take place only in emergent rather than exigent circumstances.  The definition of "exigent circumstance" – "any set of temporary and unforeseen circumstances that require immediate action to combat a threat to the security or institutional order of a facility" – was determined to be too broad to describe the limited situations in which a cross-gender strip search may occur.  Accordingly, policies were updated to reflect that cross-gender strip searches may only occur in an "emergent circumstance," defined as "a serious, unexpected, and dangerous situation requiring immediate action."

- CUS.001.SEA.001 - Searches of Incarcerated Persons and Correctional Facilities
- PCS.001.008 - Prevention, Detection and Response of Sexual Abuse and Harassment
- CUS.001.SEA.001 - Searches of Incarcerated Persons and Correctional Facilities
- IMP # 3 EMCF Satellite Entrance Control Officer
- IMP # 3A EMCF Satellite General Assignment Officer
- IMP #3B EMCF Satellite Unit Housing Officer
- IMP #15 C-Cottage Unit Officers

Additionally, the following policies were reviewed and/or updated, as noted:
- ADM.010.004 - Staff/Incarcerated Person Over Familiarity – this policy has been reviewed by all applicable departments prior to August 24, 2025. Revisions were determined to be needed and are underway.
- CUS.001.CRP.01 - Camera Review Procedures – reviewed June 2025, no revisions made
- SID IMP #14 – revised April 2025
- SID IMP #35 – revised May 2025
- SID IMP #48 - reviewed April 2025, no revisions made
- ADM.019.003 - Close Custody Units – revised May 2025
- IMM.001.004 - Zero Tolerance Policy: Prison Sexual Abuse and Sexual Harassment - reviewed May 2025, no revisions made
- IMM.004.RHU.03 - Amenities and Privileges Two-Level Program – revised October 2024

- ADM.019.003.ADJU - Adjustment Unit - revised June 2025
- ADM.019.003.EMCT - Emergency Confinement - revised June 2025
- CUS.001.BWC.011 – Body Worn Cameras - revised March 2025

And on August 23, 2024, the following Level 3 policies were updated
- EMCF.PO.01 South, North, and Dormitory Officers (replaced the Max Housing Unit Officer) - revised November 2024
- EMCF.PO.02 South North Hall Control Officers (replaced the Limited Privileges Unit) - revised November 2024

**Recommendation:** No recommendation

---

*¶ 16    NJDOC and Edna Mahan shall comply with Edna Mahan's Internal Management Procedure Titled Zero Tolerance Policy: Prison Sexual Assault, mandating zero tolerance toward all forms of sexual abuse and sexual harassment, and any revision to or replacement of that policy.*

**NJDOC — 2/24/26 Status Report**
The Institutional PREA Compliance Manager (IPCM) at Edna Mahan Correctional Facility (EMCF) continues to share monthly sexual safety newsletters with all staff. These short newsletters are shared via email, in paper format and televised on institutional monitors. Topics shared this reporting period include:
- Monthly Culture Campaign topics such as "Language Sets the Tone: Do's and Don'ts when communicating"
- How a focus on use of trauma-informed language leads to protection of staff, improved morale and contributes to the progress of EMCF
- Mechanisms in place to assist with risk reduction, safety improvements and staff performance supports
- Education on how staff can anchor their duties to safety, dignity and respect
- Education on how EMCF continues to strive for systematic improvements through staff surveys, staff training, transparency of the facility vision, various methods of communicating information to staff, assessment of data trends to identify areas of risk or need, engagement with staff via committees, initiatives, supervisory meetings, and touring

During the reporting period, 179 custody staff, 59 civilian staff, 40 contractor staff, and 46 EMCF volunteers received PREA training.

**Monitor's Finding of Compliance re A. General Policies and Procedures ¶ 16**
[X]  **Substantial Compliance**
[ ] Partial Compliance
[ ] Non-compliance
[ ] N/A not required until [ date ]
[ ] N/A monitor granted an extension until [ date ]

**Monitor's Discussion re A. General Policies and Procedures ¶ 16**

Both New Jersey Department of Corrections (NJDOC) Policy Statement IMM.001.004 Zero Tolerance Policy: Prison Sexual Assault and NJDOC Policy 001.008 Prevention, Detection and Response of Sexual Abuse and Harassment states, "It is the policy of the NJDOC to maintain zero tolerance toward all forms of incarcerated person sexual abuse and incarcerated person sexual harassment. The NJDOC will respond to, investigate, and support the prosecution of sexual abuse and sexual harassment within the correctional system and externally in partnership with state and local authorities." NJDOC IMM.001.004 and NJDOC Policy 001.008 were both reviewed in May 2025. Every year, NJDOC provides both Custody and Non-Uniform Staff with one hour of PREA Training.

The Monitor reviewed the PREA video, script, and facilitator guide used during the PREA training. The curriculum includes information on NJDOC and EMCF's zero-tolerance policy for sexual abuse and sexual harassment; how to fulfill staff responsibilities under its sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures; the right of incarcerated persons to be free from sexual abuse and sexual harassment; the right of incarcerated persons and employees to be free from retaliation for reporting sexual abuse and sexual harassment; the dynamics of sexual abuse and sexual harassment in confinement; the common reactions of sexual abuse and sexual harassment victims; how to respond to sexual abuse and sexual harassment; signs of threatened and actual sexual abuse; how to avoid inappropriate relationships with incarcerated persons; and how to communicate effectively and professionally with incarcerated persons.

Over the past four and a half years of compliance interviews, the Monitor and her Associate have met with a broad range of personnel—including staff, volunteers, and contract workers—to assess their understanding of and responsibilities under the PREA policy. Those interviewed consistently demonstrated a clear awareness of the importance of upholding a zero-tolerance stance toward any form of sexual abuse or harassment involving incarcerated individuals.

In addition, over the past four and a half years, the Monitor and her Associate have interviewed dozens of incarcerated persons (IPs). Each individual consistently affirmed that they understood sexual abuse or harassment by staff is illegal and reported that they knew how to report such incidents.

The Institutional PREA Compliance Manager (IPCM) at EMCF continues to share monthly sexual safety newsletters with all staff. During this reporting period, the topics she discussed included: the Sexual Assault Advisory Committee, this Risk Management System, the progress EMCF has made in reducing the number of allegations filed, the Culture Campaign (the fact that language sets the tone of the institution), PREA statistics from 2025, the "anchors" of EMCF; Safety, Dignity, and Respect, and Consent Decree updates.

Lastly, during all compliance visits, the Monitor and her Associate noticed posters and flyers throughout the facility mandating zero tolerance toward all forms of sexual abuse and sexual harassment and providing methods of reporting any incident of such.

**Recommendation:**  No recommendation

## D. STAFFING

*¶30: Within four months of the Effective Date, Edna Mahan shall develop a new staffing plan… (full paragraph retained in original report).*

### NJDOC — 2/24/26 Status Report
A staffing plan annual review and assessment was submitted to the Federal Monitor and DOJ on February 24, 2026. Through collaboration with the Moss Group, the plan submitted was compliant with PREA standards. In order to maintain compliance with the terms of this Agreement, NJDOC will submit a reassessed staffing plan every 12 months.

### Monitor's Finding of Compliance re D. Staffing ¶ 30
[X]  **Substantial Compliance**
[ ] Partial Compliance
[ ] Non-compliance
[ ] N/A not required until [ date ]
[ ] N/A monitor granted an extension until [ date ]

### Monitor's Discussion re D. Staffing ¶ 30
The Monitor received a staffing plan on February 25, 2022.  Updated plans were received in February in the years 2023, 2024, 2025.  On February 24, 2026, the monitor received the fourth annual staffing plan review.

**Recommendation:**  Continue to conduct annual reassessments of EMCF's staffing plan.

*¶ 32    Edna Mahan will take steps to staff the facility based on the staffing plan within one fiscal year of the completion of each staffing plan. NJDOC intends to seek amendment to the consent order in the matter of Csizmadia v. Fauver, Civ. No. 88-786, to enable compliance with this provision. In circumstances where the staffing plan is not complied with, Edna Mahan shall document and justify all deviations from the plan.*

### NJDOC — 2/24/26 Status Report
NJDOC's efforts to revise the Csizmadia Consent Order are currently awaiting resolution. Upon reaching an agreement or, if relevant, upon obtaining a court decision, NJDOC will provide the pertinent information to both the DOJ and the Federal Monitor.

**Monitor's Finding of Compliance re D. Staffing ¶ 32**

[X]  **Substantial Compliance**

[ ]  Partial Compliance

[ ]  Non-compliance

[ ]  N/A not required until [ date ]

[ ]  N/A monitor granted an extension until [ date ]

**Monitor's Discussion re D. Staffing ¶ 32**

EMCF and NJDOC have taken steps to staff the facility based on the staffing plan and, when the staffing plan is not complied with, EMCF documents and justifies all deviations from the plan on a quarterly basis.  The primary challenge in meeting the requirement to staff the facility according to the staffing plan lies in recruiting and retaining staff, which remains an ongoing issue for both NJDOC and EMCF.

NJDOC has taken steps to seek an amendment to the consent order in the matter of Csizmadia v. Fauver, Civ. No. 88-786. To provide context, below are excerpts taken from a motion to modify this consent order, filed by the Acting Attorney General on December 1, 2021:

> *The Csizmadia Consent Order arose from two interrelated cases. The first case, Gertrude Csizmadia, et al v. William Fauver, Civil Action No. 88-786, was filed on February 11, 1988. The Consent Order limits the number of gender-restricted posts to assignments that entail routine strip searches. Strip and cavity searches of prisoners by opposite gender correctional officers are permissible only under emergent circumstances. To allow for staffing flexibility and compliance with relief staffing requirements, the Csizmadia Consent Order allowed for twenty percent of "special assignment posts"4 to be gender restricted.*
>
> *Rule 60(b)(5) permits relief from an order if: (1) a significant change in law; (2) a significant change in factual conditions; (3) that "a decree proves to be unworkable because of unforeseen obstacles" or (4) that enforcement of the decree is detrimental to the public interest. The department petitioned that all four of the above apply.*
>
> *There has been no decision on this matter since the motion was made in 2021.*

On October 1, 2025, the Monitor and the DOJ received a "Collapsed Post Report" for the third quarter (July, August, and September of 2025. On January 5, 2026, the Monitor and the DOJ received a "Collapsed Post Report" for the fourth quarter (October, November, and December) of 2025. This report documents and justifies deviations from the current staffing plan.

The Monitor acknowledges the staffing challenges faced by NJDOC and EMCF, which mirror a broader national trend affecting recruitment and retention. The agency has devoted considerable time and resources to hiring efforts, leading to larger cadet

classes in the past two academy sessions, although this current academy has much smaller numbers. Many obstacles to effective hiring stem from bureaucratic processes beyond NJDOC's control—such as the Physical Ability Test required by the Police Training Commission, an issue noted in prior compliance reports.

Despite all the efforts on the part of NJDOC, the Monitor is still concerned that EMCF may not achieve the staffing levels outlined in its plan without meaningful systemic reforms.

**Recommendation:** NJDOC continues to look for ways to ensure EMCF is staffed to its required staffing level.

---

*¶ 33    NJDOC and Edna Mahan shall develop and implement a plan to recruit and retain women correctional officers at Edna Mahan in a manner that complies with Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. Edna Mahan's recruitment and retention plan shall be subject to review and approval by DOJ, which approval shall not be unreasonably withheld.*

### NJDOC — 2/24/26 Status Report

NJDOC continues to follow the Edna Mahan Correctional Facility Recruitment & Retention Plan for Women Correctional Officers. The Department continues to leverage various platforms such as social media, online recruiting sites (including Zip Recruiter, Indeed, and LinkedIn), and internal wellness programs to recruit and retain officers. The following activities took place throughout the reporting period:

**Advertising:**
- The Positive Solutions advertising campaign, which commenced in June of 2025, continues to make a significant positive impact on our recruitment efforts, resulting in a total 4,148 JoinNJDOC.gov sign-ups who listed their gender as female. Of the total 4,148, 2,857 were new entries made between August 1, 2025 – February 1, 2026.
- The NJDOC maintains a dedicated recruitment website (http://www.JoinNJDOC.gov), featuring real-time recruitment information, the NJDOC hiring process, qualification information, salary and benefits information, career opportunities and a photo carousel. Additionally, the website features a Women of NJDOC section under the diversity tab.

**Recruitment:**
- The NJDOC Division of Training, Recruitment, and Professional Development has implemented a comprehensive automated email system to keep perspective candidates informed and engaged in the recruitment process which allows the recruiting staff to provide a more personal experience for the candidates through

phone and email communications. This approach will assist in the reduction of candidates who fall out of the process.

- In 2025, the salary received while enrolled in the Academy increased to $48,000; As of 7/1/2026 the salary will increase to $50,000; Upon Academy graduation the salary increases to $53,000. The salary increases will continue to be posted on the recruiting website as a recruitment tool.
- The Governor's Office negotiated a new collective negotiations agreement with PBA 105 (the union representing correctional police officers) with a top salary of $123,104.18 ending in 2027. Upon graduation from a trainee to correctional police officer, the starting salary has increased to $53,000 progressing each year to $55,000 by the end of the contract.
- EMCF Administrator Bryan Fusaro and several EMCF Custody Staff members were present at the Training Academy in January 2026 to speak with Class 259, including those assigned to EMCF. The class was provided details about EMCF, the goals, mission, and values of the Administrative Team, and the expectations of being a Correctional Police Officer at the state's only women's facility. The overall feedback was positive.
- The NJDOC Division of Training, Recruitment, and Professional Development continues to utilize a female supervisor to act as the Women in Law Enforcement liaison. This supervisor has been tasked with networking with organizations which promote women in the law enforcement field. These organizations include National Organization of Black Women in Law Enforcement, New Jersey Women in Law Enforcement, and the National Association of Women Law Enforcement Executives.
- The NJDOC will continue to conduct a residential optional academy for future classes on a permanent basis. Trainees have the option to go home at the end of each training day in an effort to attract applicants that would be precluded from attending due to family or childcare obligations. Trainees will also have the option to change their non-residential status throughout the academy cycle, if necessary.
- The NJDOC continues its equipment reimbursement program for academy trainees, with up to $1,100 to assist with reducing financial barriers.
- The Final Assessment requirement has been removed from the Police Training Commission (PTC) required curriculum. After the Trainee successfully completes the Mid-Term Assessment, the physical requirement has been obtained.
- Academy Class #259 graduated on February 10, 2026. This class began with twenty-nine (29) female candidates and graduated twenty-four (24). Four (4) male recruits and eight (8) female recruits from this graduating class have been assigned to EMCF.

**Mentoring and Retention:**
- The NJDOC offers flexible scheduling for applicants and recruits, with mentoring support to help them prepare for training.

- The Wellness Committee at EMCF organized numerous events to support officers and boost morale, such as the Fall Back to School Drive; Suicide Prevention; Breast Cancer Awareness; World Mental Health Day; Veterans Day; Prostate Awareness Month; Cops for Clause Holiday Toy Drive; American Heart Health; and a Food Drive
- The NJDOC maintains a woman supervisor as the Women in Law Enforcement liaison. This person works with groups that support women in law enforcement to help improve recruitment and retention.
- The NJDOC has completed a project which provides computer and email access for all new and current custody staff. To date over 4,000 email addresses have been issued. This project is anticipated to be ongoing and all custody staff will receive a state email address upon completion of the Academy.
- Members of EMCF leadership continued to meet with assigned subject matter expert mentors from The Moss Group throughout the reporting period. Staff are encouraged to utilize these meetings to problem-solve current issues and brainstorm ways to improve upon current systems.

**Social Media and Community Engagement:**
- In our ongoing efforts to enhance recruitment and retention, weekly social media posts across various platforms have become a top priority. These posts are designed to maintain an active online presence and foster engagement with current, former, and potential employees. Through strategic use of social media, we aim to not only attract new talent but also to nurture relationships with existing staff members. Some posts which relate to the recruitment and retention of women officers may be found at:
1. https://twitter.com/NJ_DOC
2. https://www.facebook.com/NJDepartmentofCorrections
3. https://www.instagram.com/njdepartmentofcorrections/?hl=en
4. https://www.youtube.com/@njdocnews4178
    - In support of the recruitment of women as correctional officers, the Department continues to implement a structured, multi-platform digital recruitment strategy designed to increase visibility, transparency, and engagement among prospective female applicants. Throughout the past year, weekly recruitment-focused content has been deployed across Facebook, Instagram, X, and YouTube. Content is designed to provide authentic, officer-led perspectives that demystify the profession and present realistic expectations of the role. Recruitment content directs prospective candidates to application resources to support the hiring pipeline.
    - Content specifically highlighting women correctional officers has included: Recruit graduation coverage featuring women recruits and newly sworn officers; Extensive video and photo documentation of women participating in CSTA training; Representation of women in community volunteer

events; And, posts reinforcing promotional pathways, leadership development, and long-term career progression opportunities for women officers.

- Recruitment-related posts featuring women officers have generated consistent engagement across platforms, reinforcing the value of authentic representation in attracting prospective applicants. Through consistent digital outreach and representation of women across training, operations, and leadership environments, the Department continues to strengthen efforts to attract and retain qualified women correctional officers in alignment with the Consent Decree requirements.

## Monitor's Finding of Compliance re D. Staffing ¶ 33

**[X] Substantial Compliance**

The Monitor determined that Substantial Compliance was met solely because EMCF has taken steps to staff the facility in accordance with the staffing plan. While these efforts fulfill the technical requirement, the Monitor remains seriously concerned that the facility cannot achieve the staffing levels identified in the plan without significant internal and external reforms within the State of New Jersey. Since the Settlement Agreement began, EMCF has experienced a net loss of female officers. Unless bureaucratic barriers—such as the Police Training Commission's current Physical Ability Test requirements for female applicants—are addressed, NJDOC is unlikely to recruit, retain, or train a sufficient number of women correctional officers to meet the staffing plan.

[ ] Partial Compliance
[ ] Non-compliance
[ ] N/A not required until [ date ]
[ ] N/A monitor granted an extension until [ date ]

## Monitor's Discussion re D. Staffing ¶ 33

The Monitor and the DOJ received NJDOC's Recruitment and Retention Plan dated August 24, 2022. On February 24, 2026, they received an update detailing the implementation status of each strategy outlined in the plan. NJDOC has described the extensive efforts undertaken in its status report, as summarized above. These efforts include initiatives in advertising, recruitment, mentoring, retention, social media outreach, and community engagement.

Since August 24, 2021—the effective date of the Settlement Agreement—EMCF has lost 61 female officers and hired 44, resulting in a net loss of 17 female staff members over that period. During the current reporting period, EMCF hired 16 female officers and lost only three, for a net gain of 13. This marks the largest increase in female officers at EMCF during any reporting period since the Settlement Agreement took effect. However, the current academy class has a very small number of female cadets so the expectation is that EMCF will continue to lose more female staff members than it gains.

Unless the Police Training Commission implements bureaucratic changes—such as revising the Physical Ability Test requirements for female applicants—NJDOC may be unable to recruit, retain, or train a sufficient number of women correctional officers to meet the facility's staffing plan. In previous compliance reports, the Monitor recommended that NJDOC work with the Police Training Commission to adjust these standards to reasonably accommodate female applicants. Because this has not occurred, the Monitor now recommends that the issue be escalated beyond the NJDOC and the Police Training Commission to a higher authority.

**Recommendation:** Continue implementing the strategies identified in the "Recruitment and Retention Plan for Women Correctional Officers."

The decision to modify the requirements to reflect reasonable physical requirements for female applicants be reviewed at a higher level than NJDOC and the Police Training Commission

---

*¶34: For the annual reassessment of the staffing plan, NJDOC and Edna Mahan… shall assess, determine, and document whether adjustments are needed.*

### NJDOC — 2/24/26 Status Report
A reassessment was conducted and provided to DOJ and the Federal Monitor on February 24, 2026.

### Monitor's Finding of Compliance re D. Staffing ¶ 34
**[X]  Substantial Compliance**
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion re D. Staffing ¶ 34
On February 24, 2026, the Monitor and the DOJ received an updated annual staffing plan. The document included evaluating existing staffing levels and needs for adjustment, listing each post and position needed, and the number of hours needed for each post and position.  The plan also included listing all custody staff on each shift, a listing of staff, by gender, working overtime at EMCF and the amount of overtime worked by each staff member, and a listing of supervisors by gender working overtime at Edna Mahan.   On October 1, 2025, the Monitor and the DOJ received a "Collapsed Post Report" for the third quarter (July, August, and September of 2025. On January 5, 2026, the Monitor and the DOJ received a "Collapsed Post Report" for the fourth quarter (October, November, and December) of 2025. This report documents and justifies deviations from the current staffing plan.

During this reporting period, EMCF gained 36 new officers and had twelve (12) officers leave (retire, transfer, etc.).   This is the largest gain of officers EMCF has had since the beginning of the Settlement Agreement, in August 2021.

**Recommendation:**  Continue to conduct annual reassessments of EMCF's staffing plan.

*¶ 35: Quarterly, Edna Mahan will provide a Staffing Update to the Monitor and DOJ and shall include the following information:*
  *a. A listing of staff hired at Edna Mahan, by gender and positions filled; and*
  *b. A listing of staff who ended their employment at Edna Mahan, including gender, position, and reason for separation*

**NJDOC — 2/24/26 Status Report**
During this reporting period, the Monitor received two Staffing Updates. The first covered July, August and September 2025 and the second covered October, November and December 2025. Each update provided details on new hires and staff departures at Edna Mahan, including information on gender, positions, and reasons for separation.

Data from the submitted Quarterly Staffing Updates show that during the months of July - September 2025:
EMCF has received through new hire, promotion, or transfer: 17 new staff (5 females);
• ZERO (0) staff members (0 female) transferred to another agency;
• TWO (2) staff members (1 female) retired;
• ZERO (0) staff members were removed;
• ONE (1) staff members (0 female) resigned;
• THREE (3) staff members (0 female) transferred to another facility.

Data from the submitted Quarterly Staffing Updates show that during the months of October - December 2025:
EMCF has received through new hire, promotion, or transfer: 7 new staff (3 females);
• ZERO (0) staff members (0 female) transferred to another agency;
• ZERO (0) staff members (0 female) retired;
• ONE (1) staff members (0 female) were removed;
• TWO (2) staff members (1 female) resigned;
• THREE (3) staff members (1 female) transferred to another facility.

**Monitor's Finding of Compliance re D. Staffing ¶ 35**
**[X]  Substantial Compliance**
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

**Monitor's Discussion re D. Staffing ¶ 35**

The Monitor received two Staffing Updates during this reporting period.  The first included data from July, August, and September 2025. The second included data from October, November, and December 2025. Both staffing updates included a list of staff hired at EMCF by gender and position, as well as a listing of staff who ended their employment at Edna Mahan, including their gender, position, and reason for separation.

**Recommendation:** Continue to provide quarterly Staffing Update to the Monitor and the DOJ throughout the Settlement Agreement.

*¶36: NJDOC shall continue to employ an upper-level, Department-wide PREA Coordinator with sufficient time and authority to develop, implement, and oversee its efforts to comply with the PREA standards at Edna Mahan and all of its facilities.*

**NJDOC — 2/24/26 Status Report**

NJDOC continues to employ Ms. Capra as the full-time Agency PREA Coordinator.  Ms. Capra has sufficient time and authority to develop, implement, and oversee NJDOC's efforts to comply with the PREA standards at Edna Mahan and all of its facilities.

**Monitor's Finding of Compliance re D. Staffing ¶ 36**

[X]  Substantial Compliance
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

**Monitor's Discussion re D. Staffing ¶ 36**

New Jersey Department of Corrections Agency PREA Coordinator Sandra Capra began her role on October 22, 2022. As a result, this requirement was satisfied during the third reporting period of the Settlement Agreement. Establishing this position with sufficient time, authority, and responsibility to develop, implement, and oversee compliance with PREA standards represents a meaningful advancement for the department.

**Recommendation:** No recommendation

*¶ 37: NJDOC and Edna Mahan shall designate a full-time (40 hours/week) PREA Compliance Manager who has no other duties within NJDOC or Edna Mahan and who is assigned to oversee PREA compliance at Edna Mahan. This individual will have sufficient authority to coordinate Edna Mahan's efforts to comply with the PREA standards.*

**NJDOC — 2/24/26 Status Report**

NJDOC continues to employ Ms. Renshaw as the full-time PREA Compliance Manager

at EMCF.  Ms. Renshaw has no other duties within NJDOC or EMCF and is assigned to oversee PREA compliance at Edna Mahan. She has sufficient authority to coordinate Edna Mahan's efforts to comply with PREA standards. Assistant Superintendent Maureen Hayes serves as the back-up PREA Compliance Manager in the event Ms. Renshaw is not immediately available.

## Monitor's Finding of Compliance re D. Staffing ¶ 37
**[X]  Substantial Compliance**
[ ] Partial Compliance
[ ] Non-compliance
[ ] N/A not required until [ date ]
[ ] N/A monitor granted an extension until [ date ]

## Monitor's Discussion re D. Staffing ¶ 37
On March 28, 2022, Amelia Renshaw was officially appointed as Assistant Superintendent (AS), solely responsible for serving as the PREA Compliance Manager for EMCF. This fulfilled the paragraph's requirement during the Settlement Agreement's second reporting period. Assistant Superintendent Renshaw is part of Edna Mahan's leadership team and reports directly to the EMCF Administrator. She also maintains a "dotted-line" reporting connection with the Department-wide PREA Coordinator, meaning she receives additional oversight and guidance from this secondary supervisor in carrying out her duties.

Ms. Renshaw continues to work hard as the PREA Compliance Manager, and this full-time position has positively impacted Edna Mahan. The January 5, 2026, meeting minutes with the NJDOC PREA Coordinator and the EMCF Institutional PREA Compliance Manager note that "Overall, IPCM Renshaw continues to display outstanding knowledge of her duties, responsibilities, and PREA standards. She continues to demonstrate full understanding and compliance of policies, procedures and PREA standards.

Additionally, she continues to maintain her high level of thoroughness with thought provoked questions, discussions and suggestions for improvements, as needed.  She shows extraordinary initiative when it comes to handling any issue that may arise or when there is a need for change. She is innovative, yet practical, in her approach to handling matters. She works well internally with EMCF staff as well as with the APC and PCU staff, and other departments within the NJDOC.  Her efforts at carrying out her duties and responsibilities are to be commended. The specific dedication of an IPCM position is truly well needed to uphold PREA Standards at EMCF and well filled by Ms. Renshaw.

Overall, IPCM Renshaw embodies integrity, professionalism and competence in her role as IPCM at EMCF. She is respectful of, and respected by, both staff and IPs.  Her expertise in the development of an efficient database and excel spreadsheet tracking

system for all PREA allegations and determinations is to be commended.  She continues to be organized and diligent in maintaining all necessary documentation and is able to provide that information easily upon request. IPCM Renshaw continues to update the Lowenstein Sander database (related to the Consent Decree) in addition to her own internal tracking system effectively and efficiently, remaining up to date.  She continues to be an extreme asset in her role as IPCM, as a member of the Administrative Team at EMCF, and as a partner to the APC and PCU staff.  IPCM Renshaw is simply an invaluable asset to all.

The Monitor has worked closely with IPCM Renshaw and concurs with the assessment noted above.

**Recommendation:** No recommendation

---

*¶ 39: NJDOC and Edna Mahan shall develop a job description for Edna Mahan's PREA Compliance Manager with expected responsibilities and submit this job description to the Monitor and DOJ for review.*

### NJDOC — 2/24/26 Status Report
This requirement has been satisfied.

### Monitor's Finding of Compliance re D. Staffing ¶ 37
**[X]  Substantial Compliance**
[  ] Partial Compliance
[  ] Non-compliance
[  ] N/A not required until [ date ]
[  ] N/A monitor granted an extension until [ date ]

### Monitor's Discussion re D. Staffing ¶ 37
This requirement was met during the first reporting period. NJDOC and EMCF developed a job description for Edna Mahan's PREA Compliance Manager, which includes expected responsibilities and direct supervision by the EMCF's Facility Administrator.

**Recommendation:** No recommendation

*¶ 40: NJDOC and Edna Mahan shall provide training to the Edna Mahan PREA Compliance Manager necessary to fulfill his or her duties.*

### NJDOC — 2/24/26 Status Report

The EMCF IPCM continues to receive required training which included a Departmental IPCM Training on December 19, 2025.

The EMCF IPCM continues to meet bi-monthly with a PREA subject matter expert from The Moss Group.

### Monitor's Finding of Compliance re D. Staffing ¶ 40

[X]  **Substantial Compliance**

[ ]  Partial Compliance

[ ]  Non-compliance

[ ]  N/A not required until [ date ]

[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion re D. Staffing ¶ 40

When she began as the EMCF Institutional PREA Compliance Manager (IPCM), Assistant Superintendent Amelia Renshaw received a 20-page PREA Compliance Manager Reference Guide.  This guide identifies the responsibilities of an Institutional PREA Compliance Manager and provides guidance on a variety of duties assigned to the IPCM. The Monitor reviewed this guide and found it very thorough.

During this reporting period, Ms. Renshaw attended the IPCM Quarterly Training conducted by PREA Compliance Unit staff on December 19, 2025. Highlights included a focus on PREA Standards, policies and procedures and a presentation by SID Compliance Unit staff.  Additionally, Ms. Renshaw continues to meet bimonthly with a PREA subject matter expert from The Moss Group.

Ms. Renshaw continually enhances her impressive level of understanding and knowledge as it pertains to her position and job responsibilities as IPCM by participating in training opportunities and conferences when she can avail herself of those opportunities.

**Recommendation:** NJDOC and EMCF continue to provide the training necessary to the EMCF PREA Compliance Manager for her to fulfill her duties.

*¶ 41: NJDOC's PREA Coordinator shall document semi-annual review meetings with the Edna Mahan PREA Compliance Manager, and other supervisors as appropriate, to discuss the Edna Mahan PREA Compliance Manager's activities and job responsibilities during the relevant period.*

**NJDOC — 2/24/26 Status Report**

The NJDOC Agency PREA Coordinator and IPCM conducted a semi-annual review on January 5, 2026, as required by paragraph 41. The reports were provided to the DOJ and Federal Monitor.

**Monitor's Finding of Compliance re D. Staffing ¶ 41**

[X]  **Substantial Compliance**

[ ]  Partial Compliance

[ ]  Non-compliance

[ ]  N/A not required until [ date ]

[ ]  N/A monitor granted an extension until [ date ]

**Monitor's Discussion re D. Staffing ¶ 41**

The Monitor and the DOJ received a copy of the meeting minutes held on January 5, 2026, between the NJDOC PREA Coordinator and Edna Mahan's PREA Compliance Manager.  The following items were discussed during this meeting: PREA risk assessment, "at-risk" log, staff PREA training updates, investigation status, incident reviews, facility tours, retaliation monitoring, notification compliance, LEP issues, PREA physical plant upgrades, and signage.

The meeting minutes noted that "Open lines of communication between APC and IPCM Renshaw continue informally, year-round. The parties continue to engage in collaborative efforts to continue to support, enhance and improve (as needed), any areas of concern and/or needs at EMCF.  IPCM Renshaw keeps APC apprised appropriately and in detail.

APC and IPCM Renshaw continue to work collaboratively in their respective roles with regard to the best interests of EMCF.  APC Capra's tenure with the Department began in October 2022 and the relationship between the parties has continued to strengthen. IPCM Renshaw continues, as needed, to supply APC with historical information as to efforts of compliance at EMCF with the Consent Decree to date.  The parties continue to confer on a multitude of issues that impact EMCF and work well with other staff at EMCF and Department wide, as well as outside stakeholders such as The Moss Group."

**Recommendation:** NJDOC's PREA Coordinator continues to hold and document semi-annual review meetings with the EMCF PREA Compliance Manager.

---

*¶ 42: Policies and procedures at Edna Mahan shall require that contractors and volunteers who have contact with prisoners but are not directly supervised by NJDOC or Edna Mahan employees comply with Edna Mahan's sexual abuse and sexual harassment policies and procedures.*

### NJDOC — 2/24/26 Status Report

Volunteers continue to provide services in areas such as relapse prevention, mental health support, clubs, chaplaincy, education and reentry services for the incarcerated population. All volunteers have received the mandatory PREA training.

### Monitor's Finding of Compliance re D. Staffing ¶ 42

[X] **Substantial Compliance**

[ ] Partial Compliance

[ ] Non-compliance

[ ] N/A not required until [ date ]

[ ] N/A monitor granted an extension until [ date ]

### Monitor's Discussion re D. Staffing ¶ 42

NJDOC 001.008 Prevention, Detection and Response of Sexual Abuse and Harassment states that new non-uniformed personnel receive PREA training as part of their Orientation at their respective facilities. In addition, all NJDOC employees, volunteers, and contractors receive at least bi-annual training on their duties and responsibilities under the Department's zero-tolerance policy.  This training includes training on all ten topics listed in §115.31 employee training standard, including the requirement to immediately report any incident or allegation of sexual abuse/sexual harassment to the nearest custody staff member or an on-duty custody supervisor if more appropriate.

All NJDOC employees (custody staff, non-uniformed staff, and civilian staff), contractors, and volunteers receive PREA-specific training on an annual basis.  This training is to ensure that they know the current sexual abuse and sexual harassment policies and procedures. The training also focuses on critical issues regarding staff sexual misconduct and the prevention of prison sexual abuse, including the reporting of incidents, as well as first responder responsibilities."

Additionally, NJDOC 001.008, Prevention, Detection, and Response of Sexual Abuse and Harassment, speaks to contractors and volunteers when identifying specific responsibilities, practices, and/or procedures that staff must follow. This policy was revised on November 21, 2024.

NJDOC Policy IMM.001.004 Zero Tolerance Policy: Prison Sexual Assault states, "Contractors and volunteers are provided information regarding conduct and consequences for violating the NJDOC zero tolerance for sexual abuse and sexual harassment policies.

Reports concerning a contract vendor employee's unprofessional conduct shall be forwarded to the facility/institution/office site administrator for resolution and shall be reported to law enforcement agencies and to relevant licensing bodies, as appropriate.

The NJDOC reserves the right to terminate the services of a volunteer for violating the NJDOC zero tolerance for sexual abuse and sexual harassment policies.  Additionally, any volunteers who engages in sexual abuse shall be prohibited from contact with Incarcerated Persons and shall be reported to law enforcement agencies and to relevant licensing bodies, as appropriate.  This Level 1/3 policy was revised on December 1, 2023, and replaced EMCF's Level 3 Internal Management Procedure Custody Directive 73.

On February 25,2026, Monitor and the DOJ received a listing of the 53 volunteers currently volunteering at Edna Mahan, all of which have taken PREA training.  No volunteer is allowed inside EMCF until they have taken PREA and Undue Familiarity training.  There have been no instances of a volunteer not complying with Edna Mahan's sexual abuse and sexual harassment policies and procedures during this reporting period.

Additionally, the Monitor spoke with two volunteers who verified that they received this training.  Both volunteers knew of their responsibility to report if they learned about an allegation of sexual abuse or sexual harassment. Both volunteers remembered the confidentiality requirement and were adamant about "not saying anything to anyone else."

The Monitor's Associate held a focus group with contractors who provide medical and mental health services at Edna Mahan.  Everyone in the focus group verified that they had received PREA training and were aware of the expectation to comply with Edna Mahan's sexual abuse and sexual harassment policies and procedures.

**Recommendation:** No recommendations

## K.    REFERRALS AND INVESTIGATIONS

*¶ 75: Edna Mahan investigators shall continue to investigate allegations of sexual abuse or sexual harassment, consistent with NJDOC policy and New Jersey law. Edna Mahan will continue to refer allegations of sexual abuse and sexual harassment to local prosecutors as appropriate.*

### NJDOC — 2/24/26 Status Report

Policy PCS.001.008, titled "Prevention, Detection, Response to Sexual Assault and Harassment," reviewed last in May 2025, along with SID IMP #035 Investigation Procedures, last reviewed 5/06/2025, include procedural information requiring that all allegations of sexual abuse or sexual harassment are promptly, thoroughly, and objectively investigated and, where applicable, investigations are referred to the relevant Prosecutor's Office. Additionally, incarcerated persons under the custody of the NJDOC are informed of the investigative findings following a PREA investigation in which they were complainants. Each facility's SID investigation report for PREA cases undergoes review by both the facility-level Sexual Abuse Advisory Council (SAAC) and the Central Office SAAC. Review and consideration of any appropriate revisions of the current policy is underway by NJDOC staff internally.

### Monitor's Finding of Compliance re K. Referrals and Investigations ¶ 75

[X]  **Substantial Compliance**
[ ] Partial Compliance
[ ] Non-compliance
[ ] N/A not required until [ date ]
[ ] N/A monitor granted an extension until [ date ]

### Monitor's Discussion  re K. Referrals and Investigations ¶ 75

Standard 115.22, NJDOC assigns to the SID the responsibility of investigating violations of the laws of the United States, the State of New Jersey, as well as violations of the New Jersey Administrative Code (10A), New Jersey Criminal Code Title 2C and NJDOC policies and procedures by incarcerated persons, staff, contractors, volunteers, and other individuals who visit NJDOC facilities. Investigations will occur in a prompt, thorough, and objective manner for all allegations, including third-party and anonymous reports.

NJDOC 001.008 Prevention, Detection and Response of Sexual Abuse and Harassment, states, "NJDOC assigns to the Special Investigations Division the responsibility of investigating violations of the laws of the United States, the State of New Jersey, as well as violations of the New Jersey Administrative Code (10A), New Jersey Criminal Code Title 2C and NJDOC policies and procedures by incarcerated persons, staff and other individuals who visit NJDOC facilities. In instances where an investigation that originated as a PREA allegation has been determined, through the investigative process, not to be

PREA related, such cases will be referred to the Administration to address whether any other appropriate action should be taken.  NJDOC's Special Investigations Division, which is a division under the Office of the Commissioner, is responsible for investigating all allegations of sexual abuse. This policy was revised on November 21, 2024.

The Special Investigations Division Internal Management Procedures #035, "Investigation Procedures" states, "The New Jersey Department of Corrections ("NJDOC") assigns the Special Investigations Division ("SID") the responsibility of investigating violations of the laws of the State of New Jersey, as well as violations of the New Jersey Administrative Code (10A) and NJDOC policies and procedures by incarcerated persons, employees and other individuals who visit NJDOC facilities."

Specific to "Investigation Procedures IMP #035 also states, "When an investigation appears to involve criminal conduct, notification should be made as soon as possible to the SID Assistant Commissioner or designee and the applicable County Prosecutor's Office or the Attorney General's Office of Public Integrity and Accountability. SID shall cooperate with any joint investigation undertaken with any outside law enforcement agency.  This revised Special Investigations Division Internal Management Procedures #035 was finalized initially on December 21, 2023.

NJDOC and EMCF personnel have kept and provided the DOJ and the Monitor with a spreadsheet tracking all reports of sexual abuse, sexual harassment, retaliation for reporting, and staff misconduct or negligence related to these events. This document records the date local prosecutors were informed of each incident, the prosecutors' decision on who will conduct the investigation, and, if the Hunterdon County Prosecutor's Office declines to pursue criminal charges, the date the case is sent back to NJDOC for further investigation.

The Monitor interviewed the Deputy Chief of the Special Investigation Division (SID), who confirmed that the SID/Special Victim Unit follows the guidelines established by Hunterdon County and the Attorney General regarding the referral of investigations when appropriate. According to Chief Gonzales, Hunterdon County requests that only sexual assault cases be formally referred to its office. However, consistent with the county's policy, the SID/SVU notifies them of any incidents involving sexual contact when probable cause exists.

**Recommendation:** No recommendation

*¶ 77: Edna Mahan shall investigate all allegations of sexual abuse or sexual harassment reasonably promptly, thoroughly, and objectively, including third party and anonymous reports. The departure of the alleged abuser or victim from the employment or control of Edna Mahan or NJDOC shall not provide a basis for terminating an investigation. Administrative investigations shall be completed regardless of the results of any criminal investigations and regardless of the subject's continued employment by NJDOC.*

### NJDOC — 2/24/26 Status Report

Policy PCS.001.008, titled "Prevention, Detection, Response to Sexual Assault and Harassment," reviewed last in May 2025, along with SID IMP #035 Investigation Procedures, last reviewed 5/06/2025, include procedural information requiring that all allegations of sexual abuse or sexual harassment are promptly, thoroughly, and objectively investigated and, where applicable, investigations are referred to the relevant Prosecutor's Office. Additionally, incarcerated persons under the custody of the NJDOC are informed of the investigative findings following a PREA investigation in which they were complainants. Each facility's SID investigation report for PREA cases undergoes review by both the facility-level Sexual Abuse Advisory Council (SAAC) and the Central Office SAAC. Review and consideration of any appropriate revisions of the current policy is underway by NJDOC staff internally.

### Monitor's Finding of Compliance re K. Referrals and Investigations ¶ 77

[X]  **Substantial Compliance**
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion  re K. Referrals and Investigations ¶ 77

NJDOC 001.008 Prevention, Detection and Response of Sexual Abuse and Harassment, states, "NJDOC assigns to the Special Investigations Division the responsibility of investigating violations of the laws of the United States, the State of New Jersey, as well as violations of the New Jersey Administrative Code (10A), New Jersey Criminal Code Title 2C and NJDOC policies and procedures by incarcerated persons, staff and other individuals who visit NJDOC facilities. In instances where an investigation that originated as a PREA allegation has been determined, through the investigative process, not to be PREA related, such cases will be referred to Administration to address whether any other appropriate action should be taken.

NJDOC's Special Investigations Division, which is a division under the Office of the Commissioner, is responsible for investigating all allegations of sexual abuse. Investigations will occur in a prompt, thorough, and objective manner for all allegations, including third-party and anonymous reports.

The policy goes on to state, "The departure of the alleged abuser or victim from NJDOC employment or from an NJDOC facility does not provide a basis for terminating an investigation. Administrative investigations will be completed regardless of the results of any criminal investigations and regardless of the subject's continued employment by NJDOC or residency at an NJDOC facility".

This policy was revised on November 21, 2024.

The Special Investigations Division Internal Management Procedures #035, "Investigation Procedures" states, "The New Jersey Department of Corrections ("NJDOC") assigns the Special Investigations Division ("SID") the responsibility of investigating violations of the laws of the State of New Jersey, as well as violations of the New Jersey Administrative Code (10A) and NJDOC policies and procedures by incarcerated persons, employees and other individuals who visit NJDOC facilities." This Special Investigations Division Internal Management Procedures #035 was last revised on December 21, 2023.

Additionally, the Special Investigations Division Internal Management Procedures #014, "Procedures for Sexual Abuse, PREA Retaliation and Sexual Harassment" states, "The New Jersey Department of Corrections assigns SID the responsibility of investigating violations of the laws of the State of New Jersey, the New Jersey Administrative Code (10A) and NJ Department of Corrections policies and procedures that occur within its facilities.  SID is tasked with investigating sexual abuse, sexual harassment and retaliation.  Such alleged offenses must be objectively, thoroughly and expeditiously investigated in a professional, nonjudgmental manner."  This Special Investigations Division Internal Management Procedures #014 was last revised on December 21, 2023.

Special Investigations Division Internal Management Procedures (IMP) #035 states "The departure of an incarcerated person or staff member from NJDOC's control or employment does not provide a basis to terminate an investigation.  Investigators shall continue to investigate allegations consistent with NJ law and NJDOC policy and regardless of whether the incarcerated person or staff member has departed from NJDOC. This applies to all criminal investigations and administrative investigations.

Special Investigations Division Internal Management Procedures (IMP) #014 states," The departure of an incarcerated person or staff member from DOC's control or employment does not provide a basis to terminate an investigation.  Investigators shall continue to investigate sexual abuse, retaliation and sexual harassment consistent with NJ law and DOC policy regardless of whether the incarcerated person or staff member has departed from DOC employment or custody. "

NJDOC and EMCF staff maintain a spreadsheet, which has been provided to DOJ and the Monitor, documenting all allegations of sexual abuse, sexual harassment, retaliation for reporting, and/or staff neglect or other failures that may have contributed to these incidents. The spreadsheet includes the date local prosecutors were notified of each incident, the prosecutors' determination regarding the investigating authority, and, when the Hunterdon County Prosecutor's Office elects to pursue criminal charges, the date those charges are finalized and the matter is returned to NJDOC for administrative investigation.

The Monitor interviewed the Assistant Commissioner of the Division of Legal Services (formally AC of the Special Investigation Division), the SID Principal Investigator assigned to Edna Mahan, and the Principal Investigator from the Special Victims Unit (SVU). Each confirmed that the SID/SVU investigates every allegation of sexual abuse or sexual harassment, regardless of whether the alleged incarcerated person victim or perpetrator remains housed at Edna Mahan. They further emphasized that these investigations are conducted independently of any criminal proceedings and continue even if the alleged staff abuser is no longer employed by NJDOC.

**Recommendation:** No recommendation

---

*¶ 78: Edna Mahan shall use investigators who have received special training in institutional sexual abuse. Specialized training shall include techniques for interviewing sexual abuse victims, proper use of Miranda v. Arizona, 384 U.S. 436 (1966), and Garrity v. New Jersey, 385 U.S. 493 (1967), warnings, sexual abuse evidence collection in confinement settings, and the criteria and evidence required to substantiate a case for administrative action or prosecution referral. NJDOC shall maintain documentation that Edna Mahan investigators have completed the required specialized training in conducting sexual abuse investigations. Consistent with current practice, the Department-wide PREA Coordinator and Edna Mahan's PREA Compliance Manager shall not serve as investigators for sexual abuse investigations.*

### NJDOC — 2/24/26 Status Report

Policy PCS.001.008, titled "Prevention, Detection, Response to Sexual Assault and Harassment," reviewed last in May 2025, along with SID IMP #035 Investigation Procedures, last reviewed 5/06/2025, include procedural information requiring that all allegations of sexual abuse or sexual harassment are promptly, thoroughly, and objectively investigated and, where applicable, investigations are referred to the relevant Prosecutor's Office. Additionally, incarcerated persons under the custody of the NJDOC are informed of the investigative findings following a PREA investigation in which they were complainants. Each facility's SID investigation report for PREA cases undergoes review by both the facility-level Sexual Abuse Advisory Council (SAAC) and the Central Office SAAC. Review and consideration of any appropriate revisions of the current policy is underway by NJDOC staff internally.

**Monitor's Finding of Compliance re K. Referrals and Investigations ¶ 78**

[X]  Substantial Compliance

[  ] Partial Compliance

[  ] Non-compliance

[  ] N/A not required until [ date ]

[  ] N/A monitor granted an extension until [ date ]

**Monitor's Discussion  re K. Referrals and Investigations ¶ 78**

NJDOC 001.008 Prevention, Detection and Response of Sexual Abuse and Harassment states, "All SID investigators are required to complete the New Jersey Division of Criminal Justice Basic Course for Investigators. The specialized training provides information to help ensure that investigations are done thoroughly, competently, in an unbiased objective manner and using the most modern techniques and equipment possible".

The policy also states, "SID compiles and forwards verification documents to the NJDOC Division of Training, Recruitment, and Professional Development. This division maintains records of class attendance, which can be further analyzed to create an Individual Training Summary Report, confirming that agency investigators have successfully finished the necessary specialized training for conducting sexual abuse investigations. The Individual Training Summary Report minimally details the course description, event number, start date, end date and duration of the training.  External training validation is expected to be sent to the NJDOC Division of Training, Recruitment, and Professional Development within 72 hours of completing the training. For internal trainings, the submission is made within 24 hours of completing the training".

Lastly, this policy states, "The Agency PREA Coordinator and Institutional PREA Compliance Managers shall not serve as investigators for sexual abuse investigations".

This policy was last revised on November 21, 2024.

Special Investigations Division Internal Management Procedures #035, "Investigation Procedures," was revised on December 21, 2023.  This IMP states, "All SID Investigators will be required to complete the New Jersey Division of Criminal Justice Basic Course for Investigators as a condition of their promotion to SID.  The specialized training received by members of SID ensures that such investigations are done thoroughly, competently, in an unbiased, objective manner and using the most modern techniques and equipment possible.  Any lawful technique to perform an investigation may be used. SID shall attend continuous and ongoing training in areas relevant to its work, to include continued training in gender-responsive principles."  This Special Investigations Division Internal Management Procedures #035 was last revised on December 21, 2023.

The Monitor received verification that all SID investigators assigned to EMCF, including SVU investigators, received the following special training during the last reporting period, September 25, 2025 – February 24, 2026:

| Name of Course | Hosted by | Date(s) of Training | Attending Staff |
|---|---|---|---|
| Sexual Assault Response Team (SART) Training | Mercer County Prosecutor's Office | 9/24/25 | SVU Investigators<br>SID Investigators<br>SVU Principal Investigator<br>SID Principal Investigators |
| 1-Day Search Warrant Writing | Bloodgood Training Group | 10/15/25 | SID Principal Investigator<br>SID Investigator |
| Internal Affairs Investigations | Bloodgood Training Group | 11/5/25 or<br>11/7/25 | SVU Investigators<br>SID Investigators<br>SID Principal Investigator<br>SVU Principal Investigator |
| PREA In-Service | The Moss Group | 11/18/25 | SVU Investigators<br>SID Investigators |
| Opening Doors: Alternative Reporting Options for Sexual Assault Victim | End Violence Against Women Int'l | Virtual Completed On or Before 11/28/2025 | SVU Investigators<br>SID Investigators<br>SID Principal Investigator<br>SVU Principal Investigator |
| 27th Ann. Sex Crimes Info. Conference | MAGLOCLEN | 12/3-12/5/2025 | SVU Principal Investigator<br>SID Principal Investigators<br>SID Senior Investigators |
| Sexual Abuse Response Team (SART) Training | Mercer County Prosecutor's Office | 1/12/26 | SID Senior Investigators |

The Assistant Commissioner of the Division of Legal Services (formally AC of the Special Investigation Division), the SID Principal Investigator, the SVU Principal Investigator, and Edna Mahan's PREA Compliance Manager all confirmed that neither the Department-wide PREA Coordinator nor Edna Mahan's PREA Compliance Manager is responsible for conducting sexual abuse investigations.

**Recommendation:** No recommendation

*¶ 79: All NJDOC or Edna Mahan investigative staff must disclose any personal relationships with Edna Mahan staff who may be the subject of a current investigation and must recuse themselves from participating in an investigation involving any Edna Mahan staff member with whom they have a personal relationship. A "personal relationship" is any relationship that interferes with the investigator's ability assess the facts of the investigation in an objective manner, including relationships with a family member, business partner, roommate, cohabitant, or person with whom they are involved in a dating or close social relationship.*

### NJDOC — 2/24/26 Status Report
SID IMP #048 Staff Reporting of Personal Relationships, finalized on 12/21/23, reviewed in April 2025, but not revised, indicates that all Special Investigations Division staff are required to recuse themselves from any investigation which implicates a relationship covered by this policy, whether or not the SID staff member currently supervises, exercise authority over, or works in the same facility as the person with whom s/he has the relationship. The revised policy also includes a complete definition of personal relationships. NJDOC continues to maintain compliance in this area.

### Monitor's Finding of Compliance re K. Referrals and Investigations ¶ 79
**[X]  Substantial Compliance**
[  ]  Partial Compliance
[  ]  Non-compliance
[  ]  N/A not required until [ date ]
[  ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion  re K. Referrals and Investigations ¶ 79
Special Investigations Division (SID) Internal Management Procedures (IMP) #048, "Staff Reporting of Personal Relationships," was finalized on December 21, 2023. This IMP states, "All Special Investigations Division staff are required to certify to the SID Assistant Commissioner or designee whether they do, or do not, currently supervise, exercise authority over or work in the same facility with any employee of the NJDOC, or its vendors/contracted employees, who is:

- a family member
- business partner
- roommate
- cohabitant
- person with whom the SID staff member is involved in a dating relationship
- person with whom the SID staff member has a personal relationship
- person with whom the SID staff member has a relationship that would interfere with the SID staff member's ability to assess the facts of an investigation in an objective manner.

The policy goes on to state, "All Special Investigations Division staff are required to recuse themselves from any investigation which involves a person with whom the staff member has a relationship covered by this policy, whether or not the SID staff member currently supervises, exercises authority over or works in the same facility as the person with whom the staff member has the relationship."

The IMP continues by outlining the procedures that require all investigators to sign the SID Form PRC-1 annually by January 31. If SID Form PRC-1 is answered affirmatively, this is a "positive certification." The SID staff member will provide the identity of the involved person and the type of relationship. The staff member shall also complete the State of New Jersey Department of Corrections Recusal form.  Lastly, suppose a SID staff member is assigned a case with someone they know. In that case, the IMP requires that the SID staff shall also complete the Recusal form in cases where a witness, subject, or target of an investigation is a family member, business partner (as defined above as a person in a professional relationship), roommate, cohabitant, person with whom the investigator is involved in a personal relationship, or is a person with whom the SID staff member has a relationship that would interfere with the staff member's ability to assess the facts of an investigation in an objective manner.

The Monitor interviewed the Assistant Commissioner of the Division of Legal Services (formerly the Assistant Commissioner of the Special Investigation Division), the SID Principal Investigator, and the SVU Principal Investigator, all of whom confirmed these procedures. Each stated that if an employee were assigned to investigate an individual with whom they have a personal relationship, that employee would be fully recused from the matter, including any access to case information, communications, or investigative details.

**Recommendation:** No recommendation

---

*¶ 80: The credibility of an alleged victim, suspect, or witness shall be assessed on an individual basis and shall not be determined by the person's status as prisoner or staff, consistent with 28 C.F.R § 115.71.*

### NJDOC — 2/24/26 Status Report
The information documented in prior status reports remains accurate. SID IMP #035, last reviewed 5/06/2025, outlines investigation procedures, and addresses the assessment of credibility, report contents, and due dates. It specifies that credibility judgments should not be based on the individual's status as either incarcerated persons or staff members but on the evidence collected, including statements, documentary evidence, and recordings. The evidence as a whole determines the outcome of an allegation, ensuring a fair and evidence-based investigation process. NJDOC continues to maintain compliance in this area.

**Monitor's Finding of Compliance re K. Referrals and Investigations ¶ 80**

**[X]  Substantial Compliance**

[  ]  Partial Compliance

[  ]  Non-compliance

[  ]  N/A not required until [ date ]

[  ]  N/A monitor granted an extension until [ date ]

**Monitor's Discussion  re K. Referrals and Investigations ¶ 80**

NJDOC 001.008 Prevention, Detection and Response of Sexual Abuse and Harassment states "SID does not rate the credibility of an alleged victim, suspect, or witness by the person's status as prisoner or staff.

The credibility of a victim, suspect, or witness is assessed on an individual basis and shall not be determined based on the status of a victim or staff member. A credibility determination should place no greater weight on one person over another. Victims, suspects, and witnesses are all equally entitled to give their testimony, and none are rejected as incredible simply based on their status. Credibility is impacted by the evidence itself. It is the evidence that refutes, corroborates, or has no impact upon a person's testimonial evidence. The evidence ultimately determines whether the allegation is unfounded, substantiated, or unsubstantiated."

This policy was revised on November 21, 2024.

Special Investigations Division (SID) Internal Management Procedures (IMP) 035, Investigation Procedures was finalized on December 21, 2023.  Page 6 says, "The credibility of an alleged victim, suspect, or witness in any investigation undertaken by SID shall not be determined by the person's status as an incarcerated person or staff member.  Credibility is impacted by the evidence itself, including statements by the alleged victim and suspect, witness statements, documentary evidence, and recorded evidence, such as surveillance video, Body Worn Camera video and telephonic recordings.  The overall evidence determines whether an allegation is substantiated, unsubstantiated or unfounded and whether probable cause exists that a criminal offense has been committed.

Additionally, Special Investigations Division (SID) Internal Management Procedures (IMP) #014, "Procedures for Sexual Abuse, PREA Retaliation and Sexual Harassment" states, "The credibility of an alleged victim, suspect, or witness shall not be determined by the person's status as an incarcerated person or staff member.  Credibility is impacted by the evidence itself, to include statements by the alleged victim, witness statements, documentary evidence, and recorded evidence, such as surveillance video, Body Worn Camera video and telephonic recordings."  This IMP was finalized on December 21, 2023.

The Monitor and the DOJ reviewed all investigative reports issued during this reporting period and were granted access to all interviews and statements from the alleged victim, the staff member under investigation, and relevant witnesses. The resulting investigative determinations appeared to be grounded in the available evidence—including statements, video recordings, records, reports, and other documented facts—rather than influenced by whether the individual involved was a staff member or an incarcerated person.

**Recommendation:** No recommendation

---

*¶ 81: Within 90 days after an allegation of sexual abuse or sexual harassment is referred for investigation, NJDOC or Edna Mahan shall issue a written investigative report that indicates whether the allegation is substantiated, unsubstantiated, or unfounded. If the matter is referred to prosecutorial review, this 90-day period shall begin to run the day after NJDOC receives the prosecutor's decision as to whether the allegation is criminal or administrative (and therefore will be investigated solely by NJDOC or Edna Mahan). The investigator may request in writing, approved by the facility designee, an extension for cause that identifies the remaining actions necessary to complete the investigation. In no case shall the investigation be deemed to be unfounded solely due to the expiration of the 90 days. The investigative report shall include an effort to determine whether staff actions or failures to act contributed to the abuse, a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings.*

### NJDOC — 2/24/26 Status Report
The information documented in prior status reports remains accurate. SID IMP #035 Investigation Procedures, last reviewed 5/06/2025, incorporates information about the contents and due dates of an investigative report and is followed.

### Monitor's Finding of Compliance re K. Referrals and Investigations ¶ 81
[X] **Substantial Compliance**
[ ] Partial Compliance
[ ] Non-compliance
[ ] N/A not required until [ date ]
[ ] N/A monitor granted an extension until [ date ]

### Monitor's Discussion  re K. Referrals and Investigations ¶ 81
Special Investigations Division (SID) Internal Management Procedures (IMP) #035, Investigation Procedures was revised on December 21, 2023.  It states, "Currently there is a federal monitor reviewing sexual abuse, sexual harassment and retaliation claims that occur at EMCF pursuant to a Consent Decree settlement agreement reached between the State of New Jersey and the United States (Docket No. 3:21-cv-15031-ZNQ-TJB).  While EMCF is under Consent Decree monitoring, SID shall investigate and will issue a written investigation report within 90 days after an allegation of sexual abuse or sexual harassment or retaliation is raised for all EMCF investigations.

i. If the matter is referred for prosecutorial review, this 90-day period shall begin to run the day after NJDOC receives the prosecutor's decision remanding the matter as an administrative investigation.

ii. The investigator may request in writing an extension of the 90-day period for cause that identifies the remaining actions necessary to complete the investigation. This extension request shall be submitted to the Assistant Commissioner of Women's Services or designee.

iii. In no case shall the investigation be closed solely due to the expiration of the 90 days.

NJDOC and EMCF staff maintain, and have submitted a copy, to DOJ and the Monitor, a spreadsheet documenting all allegations of sexual abuse, sexual harassment, retaliation for reporting, and/or staff neglect or violation of responsibilities that may have contributed to these incidents. This spreadsheet identifies:

- The date of notification of the allegation
- The date the case was referred to prosecutor's review
- If the case is criminal or administrative
- If the case was returned to NJDOC, the date returned
- If an extension was requested, and if so, the date of the request, and the reason for the extension
- The date of the completed investigation.
- Whether the allegation is substantiated, unsubstantiated, or unfounded

Additionally, copies of the Sexual Assault Investigation Disposition form for each investigated allegation have been sent to the DOJ and Monitor. During this reporting period (August 25, 2025 – February 24, 2026), 6 allegations of sexual abuse were reported, all of which remain under active investigation. There were also three allegations of sexual harassment; one is still active and two have been closed as unsubstantiated

The Monitor has reviewed all investigative reports generated during this reporting period. Each report includes a determination as to whether any staff actions or omissions contributed to the abuse, a summary of the physical and testimonial evidence, an explanation of credibility assessments, and a detailed account of the investigative facts and findings.

**Recommendation:** No recommendation

---

*¶ 82: NJDOC shall ensure that an investigative summary sheet that provides an overview of the current status of an investigation is included in the investigative file. The summary information should include, among other things, basic information such as staff name(s), prisoner names(s), location of incident, type of allegation, and the date and time of day of the incident.*

## NJDOC — 2/24/26 Status Report

The information documented in previous status reports remains accurate. SID IMP #035 Investigation Procedures, reviewed on 5/06/2025, indicates that "An Investigative summary sheet that provides an overview of the current status of an investigation must be included in the investigative file. The summary information should include, among other things, basic information such as the names of staff, the names of incarcerated persons, the type of allegation and the location, date and time of the incident." Pursuant to this policy, an investigative summary sheet is currently kept on all cases investigated by SID containing all of the referenced requirements in this section.

## Monitor's Finding of Compliance re K. Referrals and Investigations ¶ 82

[X]  **Substantial Compliance**
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

## Monitor's Discussion  re K. Referrals and Investigations ¶ 82

Special Investigations Division (SID) Internal Management Procedures (IMP) 035, Investigation Procedures, was revised on December 21, 2023.  The IMP states, "An investigative summary sheet that provides an overview of the current status of an investigation must be included in the investigative file.  The summary information should include, among other things, basic information such as the names of staff, the names of incarcerated persons, the type of allegation and the location, date and time of the incident.   This IMP was finalized on December 21, 2023.

The Special Investigations Division of the NJDOC revised the investigative summary sheet and has been using this revised form since March 2022. This investigative summary sheet provides an overview of the current status of an investigation and is included in the investigative file. The summary information also includes basic details such as staff name(s), IP address (es), location of the incident, type of allegation, and the date and time of the incident.

**Recommendation:**  No recommendation

---

*¶ 83: A review team, including upper-level management officials at Edna Mahan, with input from line supervisors, investigators, and medical and mental health practitioners, shall conduct an incident review within 30 days of the conclusion of every investigation of substantiated and unsubstantiated allegations of sexual abuse by staff. The review team shall:*

   *a.  Consider whether the allegation or investigation indicates a need to change policy or practice to better prevent, detect, or respond to sexual abuse by staff;*

   *b.  Examine the area in Edna Mahan where the incident allegedly occurred to assess whether physical barriers in the area may prevent detection of sexual abuse;*

c.  *Assess the adequacy of staffing levels in that area during different shifts;*
d.  *Assess whether monitoring technology should be deployed or augmented to supplement supervision by staff; and*
e.  *Prepare a report of its findings and any recommendations for improvement and submit such report to the Department-wide PREA Coordinator, and Edna Mahan's PREA Compliance Manager.*

### NJDOC — 2/24/26 Status Report

The information documented in previous status reports remains accurate.  NJDOC policy PCS.001.008 outlines the responsibilities of the Sexual Abuse Advisory Council (SAAC), emphasizing its key role in reviewing closed cases of sexual abuse and harassment. The SAAC operates at both the facility and departmental levels, and evaluates these cases to suggest improvements in prevention, detection, and response mechanisms. This process evaluates potential policy or procedural changes, understanding the motivations behind incidents, examining environmental factors, and assessing staffing and technological needs. The aim is to recommend actionable changes, issuing Corrective Action Reports when needed, and to oversee the adoption of these recommendations to ensure ongoing enhancements in the NJDOC's approach to managing sexual abuse and harassment. SAAC reports are provided monthly to the Federal Monitor.  A formal follow-up process, through which Administration reports back to the SAAC regarding implementation of recommendations, was implemented during this reporting period. Review and consideration of any appropriate revisions of the current policy is underway by NJDOC staff internally.

### Monitor's Finding of Compliance re K. Referrals and Investigations ¶ 83

[X]  Substantial Compliance
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion  re K. Referrals and Investigations ¶ 83

NJDOC 001.008 Prevention, Detection and Response of Sexual Abuse and Harassment states,

"NJDOC has established multi-disciplinary Sexual Assault Advisory Councils (SAAC) which convenes at both the correctional facility and Departmental level.  The SAAC's review all allegations and instances of sexual abuse/sexual harassment with the purpose of assessing and improving PREA prevention, detection and response.   The purpose, composition and duties of the Sexual Assault Advisory Council (SAAC) are contained in the Internal Management Procedure PCS.001.PREA.001 Sexual Assault/PREA Advisory Council.

Facility incident reviews shall convene within thirty (30) days of the conclusion of the investigation.  SID shall present the completed investigation case for review at the SAAC meeting. These reviews are done for all allegations of sexual abuse and/or sexual harassment as defined by PREA.

The review team shall:

(1) Consider whether the allegation or investigation indicates a need to change policy or practice to better prevent, detect, or respond to sexual abuse;
(2) Consider whether the incident or allegation was motivated by race; ethnicity; gender identity; lesbian, gay, bisexual, transgender, or intersex identification, status, or perceived status; or gang affiliation; or was motivated or otherwise caused by other group dynamics at the facility;
(3) Examine the area in the facility where the incident allegedly occurred to assess whether physical barriers in the area may enable abuse;
(4) Assess the adequacy of staffing levels in that area during different shifts;
(5) Assess whether monitoring technology should be deployed or augmented to supplement supervision by staff; and
(6) Prepare a report of its findings, including but not necessarily limited to determinations made pursuant to paragraphs (d)(1)-(d)(5) of this section, and any recommendations for improvement and submit such report to the facility head and PREA compliance manager.

Each PREA allegation case review completed by the SAAC considers all factors listed above in section (d) of this subsection.

The SAAC may issue Corrective Action Reports, if necessary, and will monitor the implementation of recommended corrective actions.  Recommendations for improvement shall be implemented, or reasons for not doing so shall be documented in  the Corrective Action Reports."

This policy was last revised on November 21, 2024.

PCS.001. PREA 001 "Sexual Assault/Prison Rape Elimination Act (PREA) Advisory Council states, "Facility incident reviews shall convene within thirty (30) days of the conclusion of the investigation. SID shall present the completed investigation case for review at the SAAC meeting. These reviews are done for all allegations of sexual abuse and/or sexual harassment as defined by PREA."

The Monitor and the DOJ received copies of all Sexual Assault Advisory Council (SAAC) meeting minutes from EMCF, along with the Incident Reviews completed during this reporting period. For each matter, the SAAC evaluated whether the allegation or

resulting investigation identified a need to revise policies or practices to enhance the prevention, detection, or response to staff sexual abuse. The Council also reviewed the location of each alleged incident to assess whether physical barriers limited visibility or hindered detection, examined staffing levels across shifts, and considered whether additional monitoring technology could strengthen supervision. A summary of the Council's findings and any recommendations was provided to the Department-wide PREA Coordinator and Edna Mahan's PREA Compliance Manager.

Over the course of this reporting period, the SAAC issued seven (7) recommendations for action. All were accepted and all were documented on the spreadsheet, which is shared with all SAAC members and EMCF's administration team.

The Monitor interviewed five members of the EMCF Sexual Assault Advisory Council: the PREA Compliance Manager, a Mental Health Representative, a Health Care Representative, Assistant Commissioner of the Division of Legal Services (formally AC of the Special Investigation Division), and the Principal Investigator from the Special Investigations Unit, to discuss the Council's process. All confirmed that the PREA Compliance Manager convenes and chairs the SAAC. They further reported that meetings are held monthly and always occur within thirty (30) days following the conclusion of an investigation.

Before each SAAC meeting, members receive copies of all investigations scheduled for review. During the meeting, the Principal Investigator from the Special Investigations Division or the Special Victims Unit presents each case for discussion, providing members the opportunity to ask questions and request additional information as needed. The IPCM then prepares a report summarizing the SAAC's findings and recommendations, which is submitted to the Department-wide PREA Coordinator for review. The report is subsequently reviewed and formally approved by the NJDOC Agency SAAC.  Members confirmed that they receive copies of all recommendations and are notified once implementation is complete.

**Recommendation:** Continue to meet to conduct incident reviews.

*¶ 84: NJDOC and Edna Mahan shall review the review team's recommendations for improvement and shall implement them or document their reasons for not doing so.*

### NJDOC — 2/24/26 Status Report

The information documented in prior status reports remains accurate. EMCF's Sexual Assault Advisory Committee (SAAC) documents corrective action recommendations on a form used during post-incident reviews. These suggestions are tracked by the Institutional PREA Compliance Manager (IPCM) on a spreadsheet and forwarded to the PREA Compliance Unit (PCU) at the Central Office Headquarters (COHQ) for further review. The COHQ SAAC evaluates these recommendations, making final determinations or requesting additional actions. The PCU maintains oversight of progress through periodic

updates requested from the IPCM, ensuring that the recommended actions are implemented.

The EMCF IPCM continues to share the spreadsheet containing the suggestions with the EMCF Administrator, Associate Administrator, and all SAAC members.

**Monitor's Finding of Compliance re K. Referrals and Investigations ¶ 84**
**[X]  Substantial Compliance**
[  ] Partial Compliance
[  ] Non-compliance
[  ] N/A not required until [ date ]
[  ] N/A monitor granted an extension until [ date ]

**Monitor's Discussion  re K. Referrals and Investigations ¶ 84**
NJDOC 001.008 Prevention, Detection and Response of Sexual Abuse and Harassment states, "NJDOC has established multi-disciplinary Sexual Assault Advisory Councils (SAAC) which convenes at both the correctional facility and Departmental level.  The SAAC's review all allegations and instances of sexual abuse/sexual harassment with the purpose of assessing and improving PREA prevention, detection, and response.   The purpose, composition and duties of the Sexual Assault Advisory Council (SAAC) are contained in the Internal Management Procedure PCS.001.PREA.001 Sexual Assault/PREA Advisory Council.

Facility incident reviews shall convene within thirty (30) days of the conclusion of the investigation.  SID shall present the completed investigation case for review at the SAAC meeting. These reviews are done for all allegations of sexual abuse and/or sexual harassment as defined by PREA.

The SAAC may issue Corrective Action Reports, if necessary, and will monitor the implementation of recommended corrective actions.  Recommendations for improvement shall be implemented or reasons for not doing so shall be documented on the Corrective Action Reports.

This policy was last revised on November 21, 2024.

As noted previously, during this past reporting period, the SAAC made seven (7) recommendations for action. All were accepted and all were documented on the spreadsheet, which is shared with all SAAC members and EMCF's administration team. The Monitor and DOJ received a copy of a spreadsheet maintained by the Chair of the SAAC, the Institutional PREA Compliance Manager.  This spreadsheet records the day of the SAAC review, the concerns/recommendations made by the SAAC, the suggested action steps, and the outcome of these action steps.

**Recommendation:** EMCF's administrative team continues to review SAAC's recommendations for improvement and shall implement them or document their reasons for not doing so.

## IV. QUALITY IMPROVEMENT / DATA COLLECTION

*¶ 91: Within eighteen (18) months of the Effective Date, NJDOC and Edna Mahan shall develop and implement a quality improvement program, as described in the paragraphs below, to identify and address any trends and deficiencies in Edna Mahan's systems for prevention, detection and response to sexual abuse and sexual harassment at Edna Mahan, and to assess and ensure compliance with the terms of this Agreement.*

### NJDOC — 2/24/26 Status Report
EMCF held the Quarter 3 (October 2025) and Quarter 4 (January 2026) RMS QI Meetings at which time members reviewed and analyzed data from July – September 2025 and October – December 2025 to identify trends and abnormalities in allegations of sexual abuse, harassment, and retaliation. An in-depth review of the data factors was conducted by Committee members who made recommendations for additional data to be collected in an effort to best identify potential trends and necessary corrective action.

### Monitor's Finding of Compliance re IV. Quality Improvement/Data Collection ¶ 91
**[X]  Substantial Compliance**
[ ] Partial Compliance
[ ] Non-compliance
[ ] N/A not required until [ date ]
[ ] N/A monitor granted an extension until [ date ]

### Monitor's Discussion re IV. Quality Improvement/Data Collection ¶ 91
EMCF policy, IMP RMS #001, "Quality Improvement and Data Collection," was signed on June 11, 2025.

EMCF conducted monthly Quality Improvement (QI) meetings during this reporting period.  Additionally, EMCF held its third quarter meeting on October 23, 2025, and its fourth quarter meeting on January 21, 2026. The Monitor and the DOJ received the meeting minutes for both quarterly meetings. During these meetings, the QI committee members examined and analyzed data from July through December 2025 to identify patterns and irregularities in allegations of sexual abuse, harassment, and retaliation.

The Monitor attended most of the QI meetings during this reporting period and was impressed with the structure/functioning of the committee.  The agenda for each meeting included looking at the data for the following (required in the Settlement Agreement)

- Total number of investigations initiated regarding allegations of sexual abuse, sexual harassment, and retaliation
- The number of PREA-related allegations involving staff from EMCF referred for criminal investigation and the number of criminal prosecutions

- The number of sexual abuse, sexual harassment, and retaliation allegations that occurred on each shift
- Locations within EMCF where alleged sexual abuse and sexual harassment occurred
- Number of forensic medical exams, exams performed by sexual assault forensic examiners, and exams performed by sexual assault nurse examiners
- Number of administrative investigations pending more than 90 days
- Total number of closed investigations, total number substantiated, total number unsubstantiated, and total number of unfounded complaints of sexual abuse or sexual harassment
- The number of all grievances related to sexual abuse or sexual harassment, emergency grievances, and the number of grievances referred to EMCF's SID for investigations
- Number of times NJDOC or EMCF has determined that an EMCF IP was subject to a substantial risk of imminent sexual or physical abuse
- Number of IPs who were held in or assigned to involuntary segregation because of a risk of or report of sexual victimization
- Number of instances when IPs were used to act as interpreters for other IPs in connection with sexual abuse or sexual harassment allegations or investigations
- Number and names of pregnant IPs at EMCF
- Incidents of self-harm
- Staffing levels, by gender, during different shifts
- Number of cross-gender strip, visual cavity, and pat-down searches
- Number of staff who improperly entered or allegedly improperly entered shower or toilet areas at EMCF unannounced and without justification
- Number of staff who allegedly used sexually explicit, profane, vulgar, degrading, racially insensitive or offensive language on a frequent or repeated basis at EMCF
- Number of staff who allegedly were located in areas other than their assigned post at EMCF on a frequent or repeated basis
- Number of staff who were disciplined for actions at EMCF involving sexual abuse, sexual harassment, use of sexually explicit, profane, vulgar, degrading, or racially insensitive or offensive language, or unprofessional staff conduct with IPs, including terminations, suspensions, and resignations
- Number of staff who resigned while a sexual abuse or sexual harassment allegation or other investigation was pending at EMCF.
- Number of EMCF staff disciplined for on or off-duty conduct related to sexual abuse or sexual harassment or is a potential risk factor related to sexual abuse, such as employee misconduct at EMCF related to contraband or undue familiarity, or for off-duty conduct related to domestic violence or drug trafficking
- Staff reports of training attendance, frequency, and completion rates.

Additionally, the RMS Committee added the following data points:
- Breakdown of types of grievances
- Names of staff and incarcerated persons who reportedly engaged in or reported alleged acts of sexual abuse, sexual harassment, and/or retaliation
- Implementation of footnotes to provide more detailed information
- An expansion of staff training data
- Breakdown of staffing, which separates weekday and weekend/holiday shifts
- Identification of whether cases were deemed administrative or criminal

The Monitor commends the QI Committee for its initiative in expanding the data points within the Risk Management System. This effort reflects a commitment that extends beyond mere compliance with the Settlement Agreement. It underscores the Committee's genuine dedication to leveraging meaningful data to help safeguard incarcerated individuals from sexual abuse, sexual harassment, and retaliation.

**Recommendations:** Continue to hold RMS monthly and quarterly meetings.

*¶ 92: Within twelve (12) months of the Effective Date, Edna Mahan will draft and/or revise any quality improvement policies and procedures, consistent with the process in the Policies and Procedures Section, Section III.A, to identify and address systemic deficiencies, if identified, in Edna Mahan's sexual safety system.*

### NJDOC — 2/24/26 Status Report
EMCF held the Quarter 3 (October 2025) and Quarter 4 (January 2026) RMS QI Meetings at which time members reviewed and analyzed data from July – September 2025 and October – December 2025 to identify trends and abnormalities in allegations of sexual abuse, harassment, and retaliation. An in-depth review of the data factors was conducted by Committee members who made recommendations for additional data to be collected in an effort to best identify potential trends and necessary corrective action.  The fourth Semi-Annual RMS Report was submitted to the Federal Monitor on February 2, 2026.

### Monitor's Finding of Compliance re IV. Quality Improvement/Data Collection ¶ 92
**[X]  Substantial Compliance**
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion re IV. Quality Improvement/Data Collection ¶ 92
EMCF policy, IMP RMS #001, "Quality Improvement and Data Collection," was signed on June 11, 2025.

**Recommendations:** No recommendations

*¶ 93: NJDOC and Edna Mahan shall develop, implement, and maintain a Risk Management System ("RMS") that will document and track facility trends at Edna Mahan related to allegations of: (1) sexual abuse; (2) sexual harassment; and (3) retaliation for reporting sexual abuse or sexual harassment.*

> *a. The RMS shall ensure that trends and incidents involving sexual abuse and sexual harassment are identified and corrected in a timely manner.*
> *b. The RMS will collect, consolidate, analyze, track, and otherwise use its data described in this this Section to assist with the prevention of sexual abuse and sexual harassment.*

### NJDOC — 2/24/26 Status Report

EMCF held the Quarter 3 (October 2025) and Quarter 4 (January 2026) RMS QI Meetings at which time members reviewed and analyzed data from July – September 2025 and October – December 2025 to identify trends and abnormalities in allegations of sexual abuse, harassment, and retaliation. An in-depth review of the data factors was conducted by Committee members who made recommendations for additional data to be collected in an effort to best identify potential trends and necessary corrective action.

The fourth Semi-Annual RMS Report was submitted to the Federal Monitor on February 2, 2026.

### Monitor's Finding of Compliance re IV. Quality Improvement/Data Collection ¶ 93

[X] **Substantial Compliance**
[ ] Partial Compliance
[ ] Non-compliance
[ ] N/A not required until [ date ]
[ ] N/A monitor granted an extension until [ date ]

### Monitor's Discussion re IV. Quality Improvement/Data Collection ¶ 93

NJDOC and EMCF have developed, implemented, and are currently maintaining a manual Risk Management System (RMS). NJDOC continues to explore the development of a formal, computer-based RMS tracking system. EMCF has also begun tracking facility-wide trends related to allegations of (1) sexual abuse, (2) sexual harassment, and (3) retaliation for reporting such incidents. Additionally, they are working on manual methods to integrate the RMS with other NJDOC tracking systems, including the Early Warning System—a statewide database managed by the Special Investigations Unit—and the Administrative Referral Tracking Form, a tool developed by the NJDOC Operations Division.

**Recommendation:** Continue to maintain a Risk Management System that ensures trends and incidents involving sexual abuse and sexual harassment are identified and corrected promptly.

*¶ 95:  Edna Mahan shall aggregate the data collected on a quarterly basis and review data aggregated in order to assess and improve the effectiveness of its sexual abuse and sexual harassment prevention, detection, and response policies, practices, and training, including by:*

a. *Identifying potential patterns, changes, and problem areas (including for individual officers; for individual prisoners; and for housing units); to include problems in Edna Mahan's staffing levels, policies, practices, staff discipline system, and staff and prisoner training/education that might have contributed to those patterns if such patterns reflect increased sexual abuse and sexual harassment, decreased sexual abuse and sexual harassment detection, or inadequate responses to sexual abuse and sexual harassment;*

b. *Identifying staff or supervisors in need of retraining, performance plans, and discipline, while considering the employee's general responsibilities and specific assignment;*

c. *Developing intervention options, as appropriate, to facilitate an effective response to identified problems;*

d. *Taking corrective action on an ongoing basis; and*

e. *Preparing semi-annual reports of its findings and corrective actions, including a comparison to the findings in previous reports to assess progress.*

### NJDOC — 2/24/26 Status Report

EMCF held the Quarter 3 (October 2025) and Quarter 4 (January 2026) RMS QI Meetings at which time members reviewed and analyzed data from July – September 2025 and October – December 2025 to identify trends and abnormalities in allegations of sexual abuse, harassment, and retaliation. An in-depth review of the data factors was conducted by Committee members who made recommendations for additional data to be collected in an effort to best identify potential trends and necessary corrective action.

The fourth Semi-Annual RMS Report was submitted to the Federal Monitor on February 2, 2026.

### Monitor's Finding of Compliance re IV. Quality Improvement/Data Collection ¶ 95

[X]  **Substantial Compliance**

[ ]  Partial Compliance

[ ]  Non-compliance

[ ]  N/A not required until [ date ]

[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion re IV. Quality Improvement/Data Collection ¶ 95

As noted above, EMCF conducted monthly Quality Improvement (QI) meetings during this reporting period.  Additionally, EMCF held its third quarter meeting on October 23, 2025, and its fourth quarter meeting on January 21, 2026. The Monitor and the DOJ received the meeting minutes for both quarterly meetings. During these meetings, the QI committee members examined and analyzed data from July through December 2025 to identify patterns and irregularities in allegations of sexual abuse, harassment, and retaliation.

In both the quarterly meetings, the QI committee members reviewed aggregated data to assess the effectiveness of its sexual abuse and sexual harassment policies, practices, and training.  The Committee identified and discussed:

- Potential patterns, changes, and problem areas (including for individual officers; for individual IPs, and for housing units);
- EMCF's staffing levels
- Staff in need of retraining, and/or performance plans
- Strategies for IPs
- Intervention strategies as appropriate, for identified problems.

Additionally, on February 24, 2026, the Monitor and the DOJ received a semiannual report from the RMS/QI committee detailing its findings and corrective actions.  This report contained findings and corrective action for Q3 and Q4 and included a comparison to the findings in the previous report to assess progress.

**Recommendation:** Continue to maintain a Risk Management System that will ensure trends and incidents involving sexual abuse and sexual harassment are identified and corrected in a timely manner.

---

*¶ 96: The RMS will rely on the data analysis described above. All appropriate supervisors and investigative staff shall have access to this data described above.*
   a. *Edna Mahan's Administrator shall use information from the RMS to improve quality management practices, identify patterns and trends, and take necessary corrective action both on an individual and systemic level.*
   b. *Supervisors assigned to Edna Mahan will assure that remedial activities are completed, as well as report if the intervention was effective in changing behaviors.*
   c. *The executive staff member responsible for women's facilities, or designee, will manage the RMS and will conduct quarterly audits of the RMS to ensure that analysis and intervention are working effectively, and to identify potential patterns or trends resulting in harm to prisoners.*

**NJDOC — 2/24/26 Status Report**
EMCF held the Quarter 3 (October 2025) and Quarter 4 (January 2026) RMS QI Meetings at which time members reviewed and analyzed data from July – September 2025 and October – December 2025 to identify trends and abnormalities in allegations of sexual abuse, harassment, and retaliation. An in-depth review of the data factors was conducted by Committee members who made recommendations for additional data to be collected in an effort to best identify potential trends and necessary corrective action.  The fourth Semi-Annual RMS Report was submitted to the Federal Monitor on February 2, 2026. Assistant Commissioner Helena Tome is responsible for oversight of the RMS and conducted a quarterly audit at the conclusion of Quarters 3 and 4.

**Monitor's Finding of Compliance re IV. Quality Improvement/Data Collection ¶ 96**

[X] **Substantial Compliance**

[ ] Partial Compliance

[ ] Non-compliance

[ ] N/A not required until [ date ]

[ ] N/A monitor granted an extension until [ date ]

**Monitor's Discussion re IV. Quality Improvement/Data Collection ¶ 96**

Page 6 of IMP RMS #001, "Quality Improvement and Data Collection," states, "The RMS Coordinator will provide all appropriate supervisors and investigative staff access to the data collection to assist in these ongoing assessments. Additionally, page 8 of 12 states, "The Administrator shall use information from the RMS to improve quality management practices, identify patterns and trends, and take necessary corrective action both on an individual and systemic level. The Administrator will ensure that remedial activities are completed, as well as reported to the Assistant Commissioner of Women's Services if the intervention was effective in changing behaviors." This policy was signed on June 11, 2025.

EMCF held two quarterly RMS meetings during this reporting period: on October 23, 2025, and on January 21, 2026. The Monitor and the DOJ received meeting minutes for these quarterly meetings. Additionally, EMCF conducted monthly Quality Improvement (QI) meetings during this reporting period. The Monitor and the DOJ received the meeting minutes for all of these meetings. During these meetings, the QI committee members examined and analyzed data from July through December 2025 to identify patterns and irregularities in allegations of sexual abuse, harassment, and retaliation. The report also includes the appropriate supervisors and investigative staff with access to the data described above.

Assistant Commissioner Helena Tome is the executive staff member responsible for overseeing the RMS. Her audit of the RMS was included in the Semi-Annual report.

**Recommendation:** Continue to maintain a Risk Management system that will ensure trends and incidents involving sexual abuse and sexual harassment are identified and corrected in a timely manner.

---

*¶ 97: NJDOC and Edna Mahan will provide to the Monitor and DOJ on a semi-annual basis a list of all staff members identified through the RMS, and any corrective action, if taken. On an annual basis, NJDOC and Edna Mahan shall conduct a documented review of the RMS to ensure that it has been effective in identifying concerns regarding policy, training, or the need for discipline. NJDOC and Edna Mahan will document their review and conclusions and provide them to the Monitor and DOJ.*

**NJDOC — 2/24/26 Status Report**

EMCF held the Quarter 3 (October 2025) and Quarter 4 (January 2026) RMS QI Meetings at which time members reviewed and analyzed data from July – September 2025 and October – December 2025 to identify trends and abnormalities in allegations of sexual abuse, harassment, and retaliation. An in-depth review of the data factors was conducted by Committee members who made recommendations for additional data to be collected in an effort to best identify potential trends and necessary corrective action. The fourth Semi-Annual RMS Report was submitted to the Federal Monitor on February 2, 2026. Assistant Commissioner Helena Tome is responsible for oversight of the RMS and conducted a quarterly audit at the conclusion of Quarters 3 and 4.

**Monitor's Finding of Compliance re IV. Quality Improvement/Data Collection ¶ 97**

[X]  **Substantial Compliance**

[ ] Partial Compliance

[ ] Non-compliance

[ ] N/A not required until [ date ]

[ ] N/A monitor granted an extension until [ date ]

**Monitor's Discussion re IV. Quality Improvement/Data Collection ¶ 97**

On February 24, 2026, the Monitor and the DOJ received the fourth semi-annual report of the RMS/QI committee's findings and corrective actions.  This report covered the period of July - December 2025 and contained the following findings and corrective actions for Q3 and Q4.

**Q3 2025**

In the third quarter of 2025, there were zero (0) substantiated cases of staff on IP sexual abuse, sexual harassment or retaliatory treatment.

The following trends were identified in PREA-related allegations reported during the third quarter:

- For a third quarter in a row, there have been zero (0) substantiated cases of sexual abuse or retaliatory treatment
- The total number of staff on IP administrative investigations related to PREA incidents has decreased by half since the last quarter; the total number of staff on IP criminal investigations related to PREA incidents has decreased by 80 percent since the last quarter
- There was one (1) identified repeat IP who reported allegations of sexual harassment from Q2 to Q3
- "Unknown" shift remains the most reported shift for alleged incidents between IPs
- There was an increase in IP-on-IP allegations from Q2 to Q3
- Staff on IP allegations significantly decreased from Q2 to Q3 in the Satellite, specifically Building 1; however, IP-on-IP allegations increased in the same housing area

- Grievances related to sexual abuse and sexual harassment increased by 31 percent in Q3 compared to Q2
- One staff was disciplined during Q3 for actions involving sexual abuse or sexual harassment against IPs
- One staff resigned during Q3 while an investigation for sexual abuse or sexual harassment was pending
- Q3 saw a slight increase in the average number of male officers and male supervisors on first shift, but a decrease in the average number of female officers on first shift

In the third quarter of 2025, there was one (1) staff identified as needing retraining, performance plans, or discipline related to subjects covered in the Consent Decree or as a result of the RMS. This case involved allegation made in May 2023 of staff on IP sexual harassment. The allegation was substantiated in August 2025 and resulted in corrective action for the staff (retraining in mis-gendering/communication/ proper use of pronouns).

A staff on IP retaliation allegation, although determined to be unsubstantiated, resulted in identified issues with operational practices regarding the task of IP trash removal from a Satellite housing unit. Upon investigation, it was determined IPs who were assigned to the job task of removing trash from the unit were "volunteering" to do so. Formal clarification was provided to the population regarding their inability to volunteer for any job task not formally assigned by Classification, thereby eliminating future potential issues of IPs being out of place.

The RMS Committee discussed the need for an improved report format to improve data comparison. A new aggregate format was developed, inclusive of a tab for recording interventions and a tab for recording narrative comments. This new format has already proved useful and will continue to be utilized.

Custody supervisors continued the practice of conducting additional tours of Satellite buildings, requiring random camera audits of these areas and maintaining an additional custody officer on the units. This practice was previously instituted during Q1 and proved to be effective in reducing allegations in subsequent months.

Additionally, during the review of September 2025 data, along with an analysis of data from July, August and September 2025, the following items were discussed:

- There were zero (0) Staff vs. IP investigations initiated in August or September.
- There is no noteworthy data regarding the particular shift these incidents allegedly occurred, other than there remain once again no allegations of incidents on third shift

- Four (4) cases were closed during the month: (3) unfounded staff on IP sexual abuse and (1) substantiated IP on IP sexual harassment
- Staffing remains stable; all three (3) shifts are now covered with female supervisors
- The Training Department completed the policy update training (Sections 1, 2 and 3) for staff (with the exception of those out on an extended leave); additionally, undue familiarity training was completed with staff

The RMS Committee determined monthly data would be easier to review if it were in a different format, perhaps one similar to the CHANGE Report (landscape Excel). The committee discussed the need to begin taking a deeper look into aggregate data which will allow for a more thorough discussion of trends (positive and negative) which implemented systems have yielded the best outcomes. Director Scott and IPCM Renshaw, in consultation with AC Tome and others, will continue to identify areas for improvement in data collection and analysis, as well as resulting interventions.

**Q4 2025**

In the fourth quarter of 2025, there were zero (0) substantiated cases of staff-on-IP sexual abuse, one (1) substantiated case of sexual harassment and zero (0) substantiated cases of staff on IP retaliatory treatment.

The following trends were identified in PREA-related allegations reported during the fourth quarter:

- For a fourth quarter in a row, there have been zero (0) substantiated cases of staff on IP sexual abuse or retaliatory treatment
- The total number of staff on IP administrative investigations related to PREA incidents has remained the same since the last quarter; the total number of criminal investigations related to PREA incidents has increased since the last quarter (it is important to note, despite the increase in criminal investigations, zero (0) staff were criminally charged for a fourth consecutive quarter)
- There were five (5) identified repeat IPs who allegedly engaged in sexual abuse or sexual harassment from Q3 to Q4
- There were two (2) identified repeat IPs who reported allegations of sexual abuse and harassment from Q3 to Q4
- Q4 saw an increase in the number of unknown shifts for alleged staff on IP sexual abuse and sexual harassment
- "Unknown" shift reports increased from Q3 to Q4 for both staff on IP and IP on IP allegations
- There was an increase in IP-on-IP allegations made in closed custody units from Q3 to Q4
- Grievances related to sexual abuse and sexual harassment increased by 41 percent in Q4 compared to Q3

- Zero (0) staff were disciplined during Q4 for actions involving sexual abuse, sexual harassment against IPs
- One staff resigned during Q4 while an investigation for sexual abuse or sexual harassment was pending
- Q4 saw a slight decrease in the average number of female supervisors on first and second shift and an increase in the average numbers of female supervisors on third shift, as compared to Q3

In the fourth quarter of 2025, there were zero (0) staff identified as needing retraining, performance plans, or discipline related to subjects covered in the Consent Decree or as a result of the RMS.

A substantiated staff on IP sexual harassment allegation (misgendering) from a previous quarter resulted in one-on-one training with the Equal Employment Office (EEO), inclusive of a review of discrimination and gender-informed policies. Additionally, the IPCM instituted a practice of providing housing unit officers with a list containing IP's preferred pronouns and search preference.

A substantiated case of IP-on-IP sexual harassment resulted in revisions to the Satellite commissary distribution process. It was determined upon investigating the allegation that IPs were volunteering to distribute commissary items to the population. IPs were notified they are not permitted to volunteer for any job task not formally assigned by Classification.

Additionally, during the review of December data, along with an analysis of data from October, November, and December 2025, the following items were discussed:

- There were zero (0) allegations of staff on IP this month;.
- One (1) case was closed during the month: (1) unfounded staff on IP sexual abuse
- Four (4) new staff were trained in December; all training has been conducted for 2025
- The first half of December saw stable staffing numbers until the holidays; There is one (1) female staff on third shift remaining; EMCF will receive (5) females and (4) males from the graduating class of recruits on February 7

The Committee decided it would separately record allegations which do not fit PREA criteria with repetitive named perpetrators to better identify potential risks, despite the Consent Decree not requiring record keeping on this data. The Committee determined it is important to monitor staff and IPs and provide guidance and intervention, as determined necessary. Additionally, the data point "number of pregnant IPs" will be

expanded to separate out newly admitted pregnant IPs from those remaining in custody month-to-month.

Leanne Scott, Director of Women's Services, and Amelia Renshaw, EMCF's Institutional PREA Compliance Manager (IPCM), jointly oversee the Risk Management System (RMS) and conduct quarterly audits in collaboration with Assistant Commissioner Helena Tome. Each year, the Assistant Commissioner completes a formal, documented evaluation of the RMS to assess its effectiveness in identifying concerns related to policy compliance, training needs, or potential disciplinary action. The results of this annual review were incorporated into the fourth semi-annual RMS report.

**Recommendation:** Continue to identify areas for improvement in data collection and analysis, as well as resulting interventions.

---

*¶ 98: If either the aggregated data referenced in Paragraph 95 indicates in three consecutive RMS reports a consistent failure to improve protection of prisoners from sexual abuse and sexual harassment by staff, or if there are increases in any of the following:*
> a. *cases of staff-on-prisoner sexual abuse that are not unfounded;*
> b. *cases of staff-on prisoner sexual harassment that are not unfounded;*
> c. *cases of staff discipline for sexual abuse, sexual harassment, or staff use of sexually explicit, profane, vulgar, degrading, or racially insensitive offensive language directed at a prisoner; NJDOC and Edna Mahan shall make modifications to Edna Mahan's policies, procedures and/or practices to address the increase within 60 days of the third consecutive report.*

*Nothing in this section prevents NJDOC and Edna Mahan from making modifications sooner than this or as data and/or incidents indicate a need for adjustment.*

### NJDOC — 2/24/26 Status Report
EMCF held the Quarter 3 (October 2025) and Quarter 4 (January 2026) RMS QI Meetings at which time members reviewed and analyzed data from July – September 2025 and October – December 2025 to identify trends and abnormalities in allegations of sexual abuse, harassment, and retaliation. An in-depth review of the data factors was conducted by Committee members who made recommendations for additional data to be collected in an effort to best identify potential trends and necessary corrective action. The fourth Semi-Annual RMS Report was submitted to the Federal Monitor on February 2, 2026. Assistant Commissioner Helena Tome is responsible for oversight of the RMS and conducted a quarterly audit at the conclusion of Quarters 3 and 4.

### Monitor's Finding of Compliance re IV. Quality Improvement/Data Collection ¶ 98
**[X]  Substantial Compliance**
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

**Monitor's Discussion re IV. Quality Improvement/Data Collection ¶ 98**

As previously noted, the EMCF Quality Improvement Team continues to meet monthly to review and analyze data.  The Monitor and the DOJ have received copies of each of the monthly meeting minutes.  The Monitor and the DOJ have also received the meeting minutes from the quarterly meeting and the semi-annual Risk Management Reports.  To date, the aggregated data referenced in Paragraph 95 has not indicated a failure to improve protection of prisoners from sexual abuse and sexual harassment by staff. Additionally, there have not been any aggregated data referenced in Paragraph 95 indicating three consecutive RMS reports a consistent failure to improve the protection of prisoners from sexual abuse and sexual harassment by staff, or if there are increases in any of the following:

a. cases of staff-on-prisoner sexual abuse that are not unfounded;
b. cases of staff-on prisoner sexual harassment that are not unfounded;
c. cases of staff discipline for sexual abuse, sexual harassment or staff use of sexually explicit, profane, vulgar, degrading, or racially insensitive offensive language directed at a prisoner;

**Recommendation:** Continue to maintain a Risk Management system that reviews data and trends and make modifications to EMCF's policies, procedures, and/or practices, as needed, to address any increases in the above-listed areas.

## VI. NJDOC AND EDNA MAHAN'S REPORTING REQUIREMENTS

*¶ 104:  NJDOC and Edna Mahan shall provide to the Monitor and DOJ a semi-annual Status Report until the Agreement is terminated, the first of which shall be submitted within six months of the Effective Date.*

### NJDOC — 2/24/26 Status Report
NJDOC provided its ninth status report to DOJ and the Monitor on February 24, 2026.

### Monitor's Finding of Compliance re VI. Reporting Requirements ¶ 104
[X]  **Substantial Compliance**
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion re VI. Reporting Requirements ¶ 104
On August 24, 2025, the Monitor and DOJ received a Status Report from NJDOC.  Part of the status report described NJDOC and Edna Mahan's actions during the reporting period to implement the Settlement Agreement.  The descriptions, which referenced the Agreement paragraphs being implemented, are included in this monitoring report titled, "NJDOC Discussion:  Steps taken by NJDOC and EMCF towards implementation. Additionally, the Status Report also summarized activities NJDOC and EMCF have taken to improve conditions (including, but not limited to, sexual safety) at the facility.

**Recommendation:** Continue to provide to the Monitor and DOJ a semi-annual Status Report until the Agreement is terminated.

## VII. DOJ RIGHT OF ACCESS

---

*¶ 109:  Within 72 hours of an incident or report, NJDOC shall notify DOJ upon any incident or allegations of sexual abuse or retaliation and/or injury requiring emergency medical attention related to an allegation sexual abuse. With this notification, NJDOC and Edna Mahan shall forward to DOJ any related incident reports and medical and/or mental health reports and investigations as they become available.*

### NJDOC — 2/24/26 Status Report
In the current reporting period, a total of 45 allegations pertaining to this section have either been investigated by SID or are currently under investigation. Among these 45 cases, 7 cases have been officially closed, 0 are awaiting administrative investigation, and 38 are currently undergoing review by the respective County Prosecutor's Office. Among the cases that have been closed, 4 were determined to be unfounded, 3 were determined to be unsubstantiated and 0 were substantiated.

### Monitor's Finding of Compliance re VII. DOJ Right of Access ¶ 109
[X]  Substantial Compliance
[ ]  Partial Compliance
[ ]  Non-compliance
[ ]  N/A not required until [ date ]
[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion re VII. DOJ Right of Access ¶ 109
Since August 24, 2021, with rare exception, NJDOC has notified DOJ and the Monitor any incident or allegations of sexual abuse or retaliation and/or injury requiring emergency medical attention related to an allegation sexual abuse within 72 hours. At a minimum, the notices have included:

- The name of person making report
- The name of alleged victim
- The name of staff involved in allegation
- The incident number
- The date of incident
- The date of notification to EMCF and NJDOC
- The status of housing assignment for the alleged victim
- Restrictions of assignments for staff (if any)
- Any other preliminary reports/information available

NJDOC has also provided the DOJ and the Monitor with all related incident reports, medical and/or mental health records, and completed investigative files as they become available. In addition, NJDOC and staff at EMCF maintain a comprehensive spreadsheet—shared with the DOJ and the Monitor—tracking all allegations of sexual abuse, sexual

harassment, retaliation for reporting, and staff neglect or failure to fulfill responsibilities that may have contributed to such incidents, along with the related information described above. NJDOC, the DOJ, and the Monitor continue to meet monthly to review the spreadsheet and discuss any significant or noteworthy cases.

**Recommendation:** Continue to notify DOJ and the Monitor within 72 hours of an incident or report of allegations of sexual abuse or retaliation and/or injury requiring emergency medical attention related to an allegation sexual abuse.

Continue to forward to DOJ and the Monitor any related incident reports and medical and/or mental health reports and investigations as they become available.

---

*¶ 110:  NJDOC shall provide to the Monitor and to DOJ copies of or applicable portions of any formal reports or recommendations from the Office of the Corrections Ombudsperson or the Commission to Protect New Jersey Prisoners from Sexual Assault and Sexual Misconduct concerning efforts to establish or revise Edna Mahan or statewide policies and procedures, including reporting and data collections systems, related to sexual abuse or sexual harassment of prisoners.*

### NJDOC — 2/24/26 Status Report
There were no formal reports or recommendations during the reporting period from the Office of the Corrections Ombudsperson or the Commission specific to the protection of New Jersey prisoners from sexual assault and sexual misconduct.

### Monitor's Finding of Compliance re VII. DOJ Right of Access ¶ 110
[ ]  Substantial Compliance
[ ]  Partial Compliance
[ ]  Non-compliance
**[X]  N/A not required until the Corrections Ombudsperson's Office makes any recommendations related to sexual abuse or sexual harassment of incarcerated persons.**

[ ]  N/A monitor granted an extension until [ date ]

### Monitor's Discussion re VII. DOJ Right of Access ¶ 110
On September 4, 2025, the Monitor spoke with Corrections Ombudsperson's staff Roshunda Simmons and Mary Ann Conte, who reported that the Ombudsperson's office did not author any reports regarding EMCF during this reporting period.  Additionally, as of February 24, 2022, there is no longer a" Commission to Protect New Jersey Inmates from Sexual Assault and Sexual Misconduct."

**Recommendation:** Provide a copy to the Monitor and DOJ whenever Corrections Ombudsperson writes a formal report or makes any recommendations related to sexual abuse or sexual harassment of incarcerated persons.