# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

                                   Plaintiff,

          v.

THE STATE OF NEW JERSEY and THE
NEW JERSEY DEPARTMENT OF
CORRECTIONS,

                                   Defendants.

Civil No.: 3:21-cv-15031-ZNQ-TJB

---

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO TERMINATE THE CONSENT DECREE

---

**LOWENSTEIN SANDLER LLP**
A. Matthew Boxer
Rachel M. Dikovics
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: 973.597.2500
Email: rdikovics@lowenstein.com
*Counsel for the State of New Jersey
and the New Jersey Department of
Corrections*

**UNITED STATES OF AMERICA**
Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division
Patrick M. McCarthy
Eileen Ulate
Special Litigation Section
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
Tel: (202) 705-8762
Email: Natasha-eileen.ulate@usdoj.gov

Robert Frazer
United States Attorney
Thandiwe Boylan
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102

Tel.: 973-645-2724
Thandiwe.boylan@usdoj.gov
*Counsel for the United States of America*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 2

    I.    CONSENT DECREE TERMINATION PROVISIONS ....................... 2

    II.    SECTIONS OF THE CONSENT DECREE RIPE FOR
    TERMINATION ................................................................................ 4

        A.    SECTION III.A – GENERAL POLICIES AND
        PROCEDURES ........................................................................ 4

        B.    SECTION III.D – STAFFING ................................................ 6

        C.    SECTION III.K – REFERRALS AND
        INVESTIGATIONS ............................................................... 7

        D.    SECTION IV – QUALITY IMPROVEMENT ........................ 8

        E.    SECTION VI – REPORTING REQUIREMENTS ................. 10

        F.    SECTION VII – DOJ'S RIGHT OF ACCESS ....................... 10

ARGUMENT ..................................................................................................................... 12

    I.    LEGAL STANDARD ........................................................................ 12

    II.    DEFENDANTS HAVE SATISFIED THE CONDITIONS TO
    TERMINATE
    THE REMAINING SECTIONS OF THE CONSENT DECREE ...... 12

CONCLUSION ................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Harris v. City of Philadelphia*,
137 F.3d 209 (3d Cir. 1998) ...............................................................................12

*Holland v. N.J. Dep't of Corr.*,
246 F.3d 267 (3d Cir. 2001) ...............................................................................12

*Miles v. Aramark Corr. Serv., Inc.*,
321 F. App'x 188 (3d Cir. 2009) .........................................................................12

*United States v. New Jersey*,
194 F.3d 426 (3d Cir. 1999) ...............................................................................12

Defendants, the State of New Jersey and the New Jersey Department of Corrections ("NJDOC"), along with Plaintiff, the United States of America (together, the "Parties"), respectfully submit this memorandum of law in support of their joint motion ("Motion") to terminate the consent decree entered into by the United States and Defendants and so ordered by this Court on August 24, 2021 (ECF No. 12) (the "Consent Decree" or "Agreement"). In support of this Motion, the Parties state as follows:

## PRELIMINARY STATEMENT

On August 24, 2021, the Court so-ordered the Consent Decree between the Department of Justice ("DOJ") and Defendants. The goal of the Consent Decree was to ensure that those incarcerated at Edna Mahan "are provided with constitutional conditions that protect them from sexual abuse by staff." (Consent Decree ¶ 1.) That goal has been met; the federal monitor's Ninth Compliance Report and Monitoring Tool, which were filed with the Court on May 28, 2026, found that Defendants have attained durable compliance with all requirements of the Consent Decree. (*See* ECF Nos. 62-1, 62-2.) This means that NJDOC and the Edna Mahan Correctional Facility for Women ("EMCF"), in coordination and cooperation with DOJ, have fully implemented all of the Consent Decree's more than 80 individual substantive provisions.

This Court has granted two prior joint motions by the Parties to terminate certain sections of the Consent Decree as they came into durable compliance. (*See* ECF Nos. 47, 58.) The Parties now jointly request that this Court terminate all remaining provisions of the Consent Decree, including (1) Section III.A – General Policies and Procedures; (2) Section III.D – Staffing; (3) Section III.K – Referrals and Investigations; (4) Section IV – Quality Improvement; (5) Section VI – Reporting Requirements; and (6) Section VII – DOJ's Right of Access, and dismiss this case with prejudice.

Defendants have been in substantial compliance with these provisions for at least the minimum required time period, and in many instances, for substantially longer than the minimum period. Indeed, the federal monitor's most recent compliance report stated that "all provisions of the Agreement were found to be in compliance, reflecting a consistent, system-wide effort to enhance the safety and well-being of both staff and incarcerated individuals." (*See* ECF No. 62-1 at 18 ("Ninth Compliance Report").) Accordingly, the Consent Decree is ripe for termination.

## **BACKGROUND**

### I. **CONSENT DECREE TERMINATION PROVISIONS**

Consent Decree Section XI governs the Consent Decree's termination in whole or in part. It provides that Defendants "may seek termination of any full

substantive section . . . by filing with the Court a motion to terminate that section." (ECF No. 12 ¶ 138.)  These provisions place the burden on Defendants "to demonstrate that Edna Mahan has attained and maintained its substantial compliance as to that section for at least one year."  (*Id.*)  In addition, "[b]eginning 24 months after the Effective Date, regardless of [the Consent Decree's] specific requirements, [the Consent Decree] will terminate, or substantive sections as described in Paragraph 138 may terminate, upon a showing by NJDOC that Edna Mahan has come into durable compliance with the requirements of the Constitution that gave rise to this [Consent Decree]."  (*Id.* ¶ 139.)  To make this showing of durable compliance, "NJDOC must establish with the Court that Edna Mahan is operating in accordance with constitutional conditions of confinement and adequate protection from harm from sexual abuse for Edna Mahan prisoners and has been doing so continuously for one year."  (*Id.*)  The Consent Decree states that the Monitor's reports "confirming compliance shall be considered presumptive proof of compliance."  (*Id.* ¶ 140.)

The Parties filed two previous joint motions to terminate certain sections of the Consent Decree for which Defendants had achieved "durable compliance"; that is, Defendants received "substantial compliance" ratings from the federal monitor for those sections of the Consent Decree "for at least one year."  (*See* ECF Nos. 45, 57; Consent Decree ¶ 138.)  On November 18, 2024, this Court granted the Parties'

-3-

joint motion to terminate Section III.B – Prisoner Supervision, Section III.F – Prisoner Education, Section III.H – Reporting Allegations of Sexual Assault and Sexual Harassment, Section III.J – Response to Allegations of Sexual Assault and Sexual Harassment, Section III.L – Physical Plant, and Section V – Implementation. (*See* ECF No. 47.)  Then, on January 12, 2026, this Court granted the Parties' joint motion to terminate Section III.C – Camera Management, Section III.E – Training, Section III.G – Prisoner's Right to Privacy, Section III.I – Protecting Prisoners and Staff from Retaliation, Section III.M – Limited English Proficient (LEP) Prisoners, and Section VIII – Public Transparency.  (*See* ECF No. 58.)

## II.     SECTIONS OF THE CONSENT DECREE RIPE FOR TERMINATION

As detailed below, Defendants have attained durable compliance with the six remaining substantive sections of the Consent Decree, rendering the entire Consent Decree ripe for termination.

### A.     Section III.A – General Policies and Procedures

Section III.A – General Policies and Procedures includes paragraphs 10 through 17 of the Consent Decree.  These paragraphs required Defendants to "develop and implement policies, procedures, and practices at Edna Mahan to ensure that prisoners are protected from harm due to sexual abuse and sexual harassment." (Consent Decree Section III.A.)  Specifically, Defendants were required to work with the federal monitor and DOJ to draft, revise, adopt, and implement policies and

-4-

procedures governing: Sexual Assault, Sexual Abuse, and Sexual Harassment; Prisoner Supervision; Camera Management; Staff/Inmate Over-Familiarity; Reporting Incidents or Allegations of Sexual Abuse or Sexual Harassment; Prisoner Education; Cross-gender Searches and Viewing; Protective Custody; Prevention of Retaliation; Response to Allegations of Sexual Abuse or Sexual Harassment; Referrals and Investigations of Allegations of Sexual Abuse or Sexual Harassment; and Staff Reporting of Personal Relationships. (*See id.* ¶¶ 10–14.)  For each policy, NJDOC was required to develop a staff training plan, each of which was reviewed and approved by the federal monitor and DOJ.  (*See id.* ¶ 13.)  Each policy was considered "implemented" once staff were trained on it, generally within 18 months of its approval.  (*See id.* ¶ 14.)

The federal monitor has found Defendants in substantial compliance with all provisions of Section III.A for two consecutive monitoring periods.  (*See* ECF No. 56-2, at 2–17 ("Eighth Monitoring Tool"); ECF No. 62-2 at 4–11 ("Ninth Monitoring Tool").)  The federal monitor has found Defendants in compliance with Consent Decree paragraphs 10, 11, 13, and 16, in particular, for four consecutive monitoring periods (paragraphs 14 and 15 were not evaluated until the eighth monitoring period and paragraph 12 does not receive an independent rating in the monitoring tool).  (*See* ECF No. 49-2 at 2–15 ("Sixth Monitoring Tool"); ECF No. 55-2 at 2–16 ("Seventh Monitoring Tool").)  The federal monitor's most recent assessment stated

that staff members interviewed about these policies and procedures during compliance visits over the past four-and-a-half years "consistently demonstrated a clear awareness of the importance of upholding a zero-tolerance stance toward any form of sexual abuse or harassment involving incarcerated individuals[,]" as did the "dozens of incarcerated persons" the monitor interviewed over the same time period. (Ninth Monitoring Tool at 10.)  Indeed, the monitor found that the incarcerated persons "consistently affirmed that they understood sexual abuse or harassment by staff is illegal and reported that they knew how to report such incidents."  (*Id.*)

### B.   Section III.D – Staffing

Section III.D – Staffing includes paragraphs 30 through 42 of the Consent Decree.  Among other things, this section required Defendants to "develop a new staffing plan" that was "subject to review and approval by DOJ," (Consent Decree ¶ 30), gender-restrict certain posts at EMCF, (*id.* ¶ 32), make efforts to staff the facility according to the plan, (*id.* ¶ 32), and annually reassess the plan, (*id.* ¶ 34). NJDOC was also required to limit the duties of the department-wide PREA Coordinator and employ a full-time PREA Compliance Manager at EMCF with specific training and review requirements.  (*See id.* ¶¶ 36–41.)

The federal monitor has found Defendants in substantial compliance with all provisions of Section III.D for six consecutive monitoring periods.  (*See* ECF No. 37-2 at 42–62 ("Fourth Monitoring Tool"); ECF No. 40-2 at 41–63 ("Fifth

Monitoring Tool"); Sixth Monitoring Tool at 39–58; Seventh Monitoring Tool at 25–49; Eighth Monitoring Tool at 26–52; Ninth Monitoring Tool at 11–25.)  The federal monitor has found Defendants in substantial compliance with all paragraphs except 32 (which was not rated until the fourth monitoring period) for seven consecutive monitoring periods.  (*See generally id.*; *see also* ECF No. 33-2 at 42–62 ("Third Monitoring Tool").)  In her most recent assessment, the federal monitor noted that during the ninth compliance period, "EMCF gained 36 new officers . . ..  This is the largest gain of officers EMCF has had since the beginning of the [Consent Decree], in August 2021."  (Ninth Monitoring Tool at 18.)

### C.   Section III.K – Referrals and Investigations

Section III.K – Referrals and Investigations includes paragraphs 75 through 85 of the Consent Decree.  These paragraphs required Defendants to "ensure that all allegations of sexual abuse and sexual harassment at Edna Mahan are promptly, thoroughly, and objectively investigated and appropriately referred for prosecutorial review, and that alleged victims are advised of the outcome of their allegations." (*See* Consent Decree Section III.K.)  They established stringent standards for investigations conducted by NJDOC's Special Investigations Division ("SID"), including recusal requirements, (*see id.* ¶¶ 77–81), and required extensive management-level review of completed investigations, (*id.* ¶¶ 82–85).

The federal monitor has found Defendants in substantial compliance with all provisions of Section III.K for two consecutive monitoring periods.  (*See* Eighth Monitoring Tool at 101–129; Ninth Monitoring Tool at 26–43.)  During the seventh monitoring period, Defendants received a "partial compliance" rating as to paragraph 77 but have otherwise been found in substantial compliance with all provisions of Section III.K for eight consecutive monitoring periods.  (*See* ECF No. 26-2 at 171–199 ("Second Monitoring Tool"); Third Monitoring Tool at 163–188; Fourth Monitoring Tool at 165–190; Fifth Monitoring Tool at 161–184; Sixth Monitoring Tool at 145–169; Seventh Monitoring Tool at; Eighth Monitoring Tool at 101–129; Ninth Monitoring Tool at 26–43.)  The federal monitor and DOJ closely reviewed "all investigative reports issued during [the ninth compliance] period and were granted access to all interviews and statements from the alleged victim, the staff member under investigation, and relevant witnesses."  (Ninth Monitoring Tool at 36.)  The federal monitor found that "the resulting investigative determinations" consistently "appeared to be grounded in the available evidence."  (*Id.*)

### D.    Section IV – Quality Improvement

Section IV – Quality Improvement includes paragraphs 91 through 98 of the Consent Decree.  This section required Defendants to develop and implement policies and procedures "to identify and address systemic deficiencies, if identified, in Edna Mahan's sexual safety system."  (Consent Decree ¶ 92.)  This primarily

involved the development, implementation, and maintenance of a risk management system ("RMS") to "document and track facility trends at Edna Mahan related to allegations of: (1) sexual abuse; (2) sexual harassment; and (3) retaliation for reporting sexual abuse or sexual harassment." (*Id.* ¶ 93.) The RMS tracks more than 30 data points, (*see id.* ¶ 94), that are aggregated and analyzed on a quarterly basis, (*id.* ¶ 95). NJDOC and EMCF were further required to provide semi-annual reports to the federal monitor and DOJ regarding the aggregated data, (*id.* ¶ 97), and modify policies as needed based on RMS reports, (*id.* ¶ 98).

The federal monitor has found Defendants in substantial compliance with all provisions of Section IV for two consecutive monitoring periods. (*See* Eighth and Monitoring Tool at 138–162; Ninth Monitoring Tool at 44–56.) The federal monitor has found Defendants in substantial compliance with paragraphs 91 and 93 through 97 for three consecutive monitoring periods, (*see id.*; *see also* Seventh Monitoring Tool at 131–153); paragraphs 92 and 98 were not rated for compliance until the eighth monitoring period. In her most recent assessment, the federal monitor lauded NJDOC's Quality Improvement Committee for "expanding the data points within the [RMS][,]" which, she found, "reflects a commitment that extends beyond mere compliance with the [Consent Decree]. It underscores the Committee's genuine dedication to leveraging meaningful data to help safeguard incarcerated individuals

from sexual abuse, sexual harassment, and retaliation." (Ninth Monitoring Tool at 46.)

### E. Section VI – Reporting Requirements

Section VI – Reporting Requirements includes paragraphs 104 through 106 of the Consent Decree. These paragraphs required Defendants to provide a semi-annual status report to the federal monitor and DOJ, (Consent Decree ¶¶ 104–105), to "maintain sufficient records to document that the requirements of this Agreement are being properly implemented," and to provide "all documents reasonably requested by DOJ," (*id.* ¶ 106).

The federal monitor has found Defendants in compliance with paragraph 104 (the only paragraph in this Section that receives a compliance rating) since the first monitoring period. (*See* ECF No. 17-2 at 222–223 ("First Monitoring Tool"); *see also* Second Monitoring Tool at 230–231; Third Monitoring Tool at 220–221; Fourth Monitoring Tool at 223–224; Fifth Monitoring Tool at 219–220; Sixth Monitoring Tool at 203–204; Seventh Monitoring Tool at 154–156; Eighth Monitoring Tool at 163–164; Ninth Monitoring Tool at 57.)

### F. Section VII – DOJ's Right of Access

Section VII – DOJ's Right of Access includes paragraphs 107 through 110 of the Consent Decree. These paragraphs primarily required Defendants to report "any incident or allegations of sexual abuse or retaliation and/or injury requiring

-10-

emergency medical attention related to an allegation sexual abuse" to DOJ within 72 hours. (Consent Decree ¶ 109.) They also required Defendants to permit compliance visits by the federal monitor and DOJ, (*id.* ¶ 107), and provide any formal reports from the Corrections Ombudsperson or a state commission "concerning efforts to establish or revise Edna Mahan or statewide policies and procedures . . . related to sexual abuse or sexual harassment" to the monitor and DOJ, (*id.* ¶ 110).

The federal monitor has found Defendants in compliance with paragraph 109 since the first monitoring period; paragraph 110 has always received a "N/A" rating because no relevant reports have been issued (paragraphs 107 and 108 did not require monitoring). (*See* First Monitoring Report at 224–229; Second Monitoring Report at 232–237; Third Monitoring Report at 222–225; Fourth Monitoring Report at 225–229; Fifth Monitoring Report at 221–224; Sixth Monitoring Report at 205–208; Seventh Monitoring Report at 157–161; Eighth Monitoring Report at 165–168; Ninth Monitoring Report at 58–59.) In her most recent compliance assessment, the federal monitor stated that NJDOC has consistently made the notifications required under paragraph 109 "[s]ince August 24, 2021" and that throughout that time, NJDOC, the federal monitor, and DOJ have consistently met monthly (which is not a requirement of the Consent Decree) to review the status of all open investigations that fall under the Consent Decree and "discuss any significant or noteworthy cases." (Ninth Monitoring Tool at 58–59.)

-11-

## ARGUMENT

### I.    LEGAL STANDARD.

"A consent decree is a hybrid of a contract and a court order." *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 277 (3d Cir. 2001). As "[c]onsent decrees are analogous to contracts," courts "interpret them with reference to traditional principles of contract interpretation." *Miles v. Aramark Corr. Serv., Inc.*, 321 F. App'x 188, 191 (3d Cir. 2009) (quoting *United States v. New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999)). Courts "interpret a consent decree as written" and do "not impose terms when the parties did not agree to those terms." *Holland*, 246 F.3d at 281. Courts "discern the scope of a consent decree by examining the language within its four corners" and will not resort to extrinsic evidence unless the "decree itself is ambiguous." *New Jersey*, 194 F.3d at 430 (quoting *Harris v. City of Philadelphia*, 137 F.3d 209, 212 (3d Cir. 1998)).

### II.    DEFENDANTS HAVE SATISFIED THE CONDITIONS TO TERMINATE THE REMAINING SECTIONS OF THE CONSENT DECREE.

The Termination Provisions of the Consent Decree explicitly grant Defendants the right to "seek termination of any full substantive section . . . by filing with the Court a motion to terminate that section." (Consent Decree ¶ 138.) The Consent Decree places the burden on Defendants "to demonstrate that Edna Mahan has attained and maintained its substantial compliance as to that section for at least

-12-

one year." (*Id.*) The Monitor's "assessments confirming compliance shall be considered presumptive proof of compliance." (*Id.* ¶ 140.)

As detailed *supra*, Defendants have provided proof of their substantial and durable compliance with Sections III.A, III.D, III.K, IV, VI, and VII for at least one year. In many instances, Defendants have gone above and beyond the requirements of the Consent Decree, and the federal monitor has acknowledged Defendants' "genuine dedication" to "safeguard[ing] incarcerated individuals from sexual abuse, sexual harassment, and retaliation." (Ninth Monitoring Tool at 46.) Defendants, the federal monitor, and DOJ agree that Defendants have come into durable compliance with the entire Consent Decree both as a technical matter and as a practical one. Accordingly, the Consent Decree is ripe for termination.

## CONCLUSION

Pursuant to the Court's authority over this Consent Decree, the Parties respectfully request that the Court grant this Motion and terminate the Consent Decree.

Dated: July 8, 2026                          Respectfully submitted,

**LOWENSTEIN SANDLER LLP**          **UNITED STATES OF AMERICA**

*s/ Rachel M. Dikovics*                      *s/ Eileen Ulate*
A. MATTHEW BOXER                        Harmeet K. Dhillon
RACHEL M. DIKOVICS                       Assistant Attorney General
One Lowenstein Drive                         Civil Rights Division
Roseland, New Jersey 07068                Patrick M. McCarthy
Telephone:  973.597.2500                    Eileen Ulate
Email:  rdikovics@lowenstein.com          Special Litigation Section
                                            United States Department of Justice
                                            950 Pennsylvania Avenue, NW
*Counsel for Defendants*                      Washington, DC 20530
                                            Tel: (202) 705-8762
                                            Email: Natasha-eileen.ulate@usdoj.gov

                                            *s/ Thandiwe Boylan*
                                            Robert Frazer
                                            United States Attorney
                                            Thandiwe Boylan
                                            Assistant U.S. Attorney
                                            United States Attorney's Office
                                            District of New Jersey
                                            970 Broad Street, Suite 700
                                            Newark, NJ 07102
                                            Tel.: 973-645-2724
                                            Thandiwe.boylan@usdoj.gov